J-A33040-16

2017 PA Super 146

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER LUKETIC | : | |
| | : | |
| Appellant | : | No. 789 WDA 2016 |

Appeal from the Judgment of Sentence dated June 1, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0000333-2016

BEFORE:    LAZARUS, SOLANO, and STRASSBURGER,* JJ.

OPINION BY SOLANO, J.:                              **FILED MAY 16, 2017**

Appellant, Christopher Luketic, appeals from his judgment of sentence of six to twelve months' incarceration. After careful review, we vacate the judgment of sentence and remand for resentencing.

On September 22, 2015, Appellant and his friend Nicole Stevens were arrested for purchasing heroin from a drug dealer named Lanel Buckner. The Commonwealth described the transaction and arrest as follows:

> [Police detectives] were conducting surveillance in a high-crime, high-drug trafficking area of the City of Pittsburgh, when they observed the [co-]defendant, Lanel Buckner, texting and continuously looking down the street.
>
> They then observed a vehicle driven by another defendant, Chris Luketic, pull into oncoming traffic and stop directly in front of Mr. Buckner.

---

* Retired Senior Judge assigned to the Superior Court.

They also were able to later identify the front seat passenger of Mr. Luketic's vehicle as the third co-defendant, Nicole Stevens.

At that time, detectives were able to observe a transaction where they observed Mr. Buckner hand Mr. Luketic suspected heroin in exchange for United States currency.

At that point, the detectives initiated a traffic stop on the vehicle in which Mr. Luketic and Miss Stevens were operating.

At that time, Miss Stevens did hand the detectives eight stamp bags of suspected heroin, and pointed out several more on the floor of the vehicle. They also observed a loaded syringe on the floor of the rear of their vehicle.

N.T., 6/1/16, at 18-19.

On June 1, 2016, Appellant entered an open plea of guilty to possession of a controlled substance.[1] Buckner also pleaded guilty, and he was sentenced immediately prior to Appellant to three to six years'

---

[1] 35 P.S. § 780-113(a)(16). "In an open plea agreement, there is an agreement as to the charges to be brought, but no agreement at all to restrict the prosecution's right to seek the maximum sentences applicable to those charges. At the other end of the negotiated plea agreement continuum, a plea agreement may specify not only the charges to be brought, but also the specific penalties to be imposed." *Commonwealth v. Dalberto*, 648 A.2d 16, 20 (Pa. Super. 1994) (citation omitted), *appeal denied*, 655 A.2d 983 (Pa.), *cert. denied*, 516 U.S. 818 (1995). Here, in exchange for Appellant's guilty plea, the Commonwealth withdrew two charges of possession of a controlled substance with intent to deliver, 35 P.S. § 780-113(a)(30). *See* N.T. at 10-11. According to Appellant, his involvement in the crime was limited to driving his friend to buy heroin from Buckner. *Id.* at 18-20, 30.

incarceration in a state correctional institution. N.T. at 21.[2] While sentencing

Buckner, the trial judge stated

> I'm giving you three to six years in the State Correctional Institution. You'll be on probation for five years after you get through with that. And zero tolerance for drugs. Maybe marijuana will be legalized by then.
>
> But I don't know how many more opportunities I can give you. You are not a dumb kid. You have just chosen you are going to sell dope to people. And that's the consequence. You have to deal with the consequences of having a blatant disregard for everyone else's life. You want to sell dope. **You have dope fiends like him[] ([i]ndicating [Appellant])[.] He is going to jail, too. He is not walking out of here either.**

N.T. at 21-22 (emphasis added).

At the conclusion of Buckner's sentencing hearing, the court ordered that Appellant's urine be tested. While Appellant was absent from the courtroom, the court had the following exchange with Appellant's defense counsel:

> [APPELLANT'S COUNSEL:] . . . I have concerns with my client being sentenced before the Court, given the Court's statement on the record and indicating that the Court was already predisposed to enter a jail sentence of some sort before I had the opportunity to elicit testimony --
>
> THE COURT: He is sitting there sweating like a pig.[3] I believe he is going to have hot urine.

---

[2] Buckner, who sold the heroin recovered from Appellant's vehicle, had multiple prior convictions for drug offenses. N.T. at 6; 18-20.

[3] Although the court did not use the past tense for this remark, it appears from the transcript that Appellant had either left the courtroom or was in the

*(Footnote Continued Next Page)*

- 3 -

> [APPELLANT'S COUNSEL:] I'm objecting to the Court imposing sentence if the Court was willing to enter a jail sentence without me eliciting any mitigating factors, because his guidelines in the standard range are either RS [restorative sanctions] to 1 and RS to 9 or an RS – [¶] The District Attorney and I are on two different pages as to what his prior record score is.
>
> THE COURT: Why don't you wait until your client comes back. I don't want to address anything you are saying without him being here. I'll give you an opportunity to address all of that.

N.T. at 26-27.

Upon Appellant's return, his sentencing proceeding began. The court began by inquiring about Appellant's urine test. Although the test showed that Appellant did have opiates in his system, the court determined that Appellant had a prescription for them. N.T. at 28.[4]

Defense counsel then renewed his objection to Appellant being sentenced by the court, in the following exchange:

> [APPELLANT'S COUNSEL:] Briefly, Your Honor -- as the Court instructed, we were waiting for [Appellant] to come back [from his urine test]. I want to impose an objection on the record since the Court indicated in this co-defendant case that the Court was inclined to send [Appellant] to jail.

_(Footnote Continued)_ ⸻

process of leaving the courtroom for his urine test when this colloquy took place.

[4] The court stated "You have hydrocodone that you got on May the 30th. All right. So you have an excuse for having opiates in your system. Very well." N.T. at 28. Later, the court opined that Appellant should have made more progress towards his recovery from addiction, and should no longer be using prescription opiates. _Id._ at 33-34.

THE COURT: **I am going to send him to jail. Let's not have any equivocation. He is going to jail, because he and the guy who went to jail, they are both opposite sides of the same coin. That's why he is going to jail, because he creates the guy that is with him.** But go ahead.

[APPELLANT'S COUNSEL:] If I can make a record on behalf of my client. The Court has already prejudged that matter before I got to even elicit any testimony out of my client that would bear upon any mitigating factors. [¶] My client, based upon a prior record score of one is within RS to 6 range. He is within a probationary range.[5] [¶] Our sentencing code is quite clear that before this Court imposes judgment of any kind, they need to pay attention in these matters.

THE COURT: I'm all ears. I'm all ears. Tell me something mitigating.

[APPELLANT'S COUNSEL:] I have concerns that this Court doesn't care what is mitigating, based upon that determined -- already expressed --

THE COURT: Tell me what is mitigating. We don't have to have any guesswork. Tell me what is mitigating. Give me the mitigating facts.

N.T. at 28-29 (emphases added).

_____

[5] Counsel thus argued that Appellant's prior record score was 1, and that the standard sentencing guidelines called for a sentence of restorative sanctions ("RS") (*e.g.*, probation) at the low end, and a minimum of six months' incarceration at the high end. **See** N.T. at 29. Although defense counsel had reported that there was a dispute with the Commonwealth regarding Appellant's prior record score, the Commonwealth did not express disagreement with defense counsel's discussion of the guidelines. We note that at this point, the court had already stated, "I am going to send him to jail." **See id.**

- 5 -

Appellant's counsel then presented a case for a mitigated sentence based on the following factors: Appellant's acceptance of responsibility,[6] his drug addiction, the fact he is not a drug dealer, his attempts at recovery, his employment status, and his relationship with his three-year-old daughter. N.T. at 29-36. Neither the court nor defense counsel made any reference during this discussion (or at any other time) to any pre-sentence investigation report ("PSI") regarding Appellant, and there is no indication that the court ordered one, even though Appellant, who had a prior conviction for possession of a controlled substance, could have received a sentence in excess of one year of incarceration for his misdemeanor.[7] There is no PSI in the record, and the record does not indicate whether either party waived ordering of a PSI.

During defense counsel's presentation regarding mitigating factors, after it was established that Appellant is 28 years old and has an opiate addiction, the court engaged with Appellant by asking him, among other

---

[6] In addition to pleading guilty, Appellant waived his right against self-incrimination and cooperated with the police in admitting his involvement in the drug transaction. N.T. at 29-30.

[7] *See* 35 P.S. § 780-113(b) (subjecting a violator of subsection (a)(16) to a sentence of incarceration not exceeding three years, where the person has previously been convicted under the same section); Pa.R.Crim.P. 702(A)(2)(a) (mandating that if a defendant could be sentenced to more than one year of incarceration, the sentencing judge must state on the record the reasons for not utilizing a PSI). Appellant has a prior conviction for possession of a controlled substance. N.T. at 20.

things, what steps he had taken to pursue recovery from his addiction and what evidence he could provide of those steps. N.T. at 32-35.[8] At the end of this exchange, the court stated:

_____

[8] The following colloquy occurred:

> [APPELLANT'S COUNSEL:] Mr. Luketic, are you currently taking any steps to address this drug problem you have?
> [APPELLANT]: Yes, sir.
>
> [APPELLANT'S COUNSEL:] Tell the Court what it is.
> [APPELLANT]: Your Honor, I have an appointment tomorrow to see a therapist and a doctor.
> . . .
>
> THE COURT: Show me what you have done from the time that you were caught with this heroin, up until this time of sentencing. Show me what you have done to get help.
> [APPELLANT]: I went to the Suboxone doctor.
>
> THE COURT: Show me what you have done. Give me some evidence of any intervention you got from the date of arrest until the date of sentencing. Show me what you got.
> . . .
> [APPELLANT]: . . . I have my insurance that I'm approved for Suboxone to go to the doctor.
> . . .
>
> THE COURT: Let's put this on the record: United Health Community Service Plan has received your request for prior authorization of Bupron, Naloxone, Sub 8, 2 milligrams. [¶] It was approved on April the 2nd, and today is June the 1st, and you never got it; right.
> [APPELLANT]: No, sir. I did do it.
>
> THE COURT: That's all. I want to make sure we are clear. You were approved to get this drug to block opiate use two months ago, and today, the day of sentencing, you are still here with some scripts for opiates. I want to make sure we are clear.

*(Footnote Continued Next Page)*

We are here imposing sentencing for cases in which you pled guilty to, because we have a heroin epidemic in this region. We have people who sell dope. We have people who use dope. We have people who drive people to get dope, and they disseminate it throughout the county. I don't believe they are independent. I believe they are all a part of the same animal. Everyone is going to take some share of fat in the game, including you.

*Id.* at 35-36. When asked what else he would like to tell the court, Appellant stated, "I plan on attending treatment whenever I leave here," to which the court responded, "When you leave. We are going to get you some help." *Id.* at 36. Appellant's counsel requested a sentence of probation, house arrest, or work release, and for Appellant to go to treatment. *Id.* at 37. Defense

_(Footnote Continued)_ _____

. . .

[APPELLANT'S COUNSEL:] Have you dealt with a doctor or been in any type of treatment prior to today in dealing with your heroin addiction?
[APPELLANT]: Yes, sir.

[APPELLANT'S COUNSEL:] Tell the judge what that is.
[APPELLANT]: I have been to the Suboxone clinic and I'm in the process of getting switched over to another doctor, which I'll be at tomorrow, with another therapist and psychiatrist.
. . .

THE COURT: Do you have any record of NA meetings you go to?
[APPELLANT]: No. I can bring slips in.

THE COURT: Today is the day, buddy. Today is the day for us to do everything we are going to do. I want all of the facts so I can make an intelligent decision.

N.T. at 32-35. "NA" is not identified in the record. We assume the abbreviation is a reference to Narcotics Anonymous, an organization that conducts meetings for those seeking help for narcotics addiction or abuse.

counsel closed by saying, "And I would renew my objection to the Court imposing sentence, based upon a jail sentence, and having that predetermined before I even had the opportunity to elicit that information." *Id.*

The court then sentenced Appellant to serve six to twelve months' incarceration in county prison, and a year of probation. N.T. at 37. The court stated, "Hopefully you'll get some intervention while you are there." *Id.* The court noted that it was Appellant's second conviction for this offense, and stated to Appellant, "You are as guilty as the guy who was with you. You conspired to distribute drugs, to sell drugs, to consume drugs. He is going to the State Correctional Institution, and you are going to the Allegheny County Jail." *Id.*

Appellant filed no post-sentence motion following his sentencing, but filed a notice of appeal on June 2, 2016. Appellant's sentence was stayed pending the outcome of this appeal. *See* Order, 6/9/16.

In a Rule 1925(b) Statement, Appellant argued that the court's predisposition to sentence Appellant to jail meant that the court should have recused from participating in the sentencing proceeding and that the sentence was invalid because it was not individualized. In response, the trial court issued an opinion pursuant to Rule 1925(a) of the Rules of Appellate Procedure. The court began the opinion by stating its perspective on the case:

Mr. Luketic is a drug addict. He buys heroin and then consumes this poison. But, the poison is not self-centered. His purchase of this product allows others — like his co-defendant — to sell this modern day plague. Both the buyer and the seller deserve punishment. Luketic feels his 6-12 months in the county jail followed by a year's probation is too harsh. So [he] has appealed from the Court's June 1, 2016, sentence.

Luketic and a female friend drive to an area of the City of Pittsburgh known for its criminal activity. Lanel Buckner is open for business. He is seen texting and constantly looking around. A car pulls up. It stops in front of Buckner. Luketic is driving. Ms. Nicole Stevens is riding shotgun. Buckner hands Luketic what police believe to be heroin. Money goes to Buckner. Luketic drives away. He doesn't get far. Police converge on the car. They recover 8 stamp bags of heroin from Ms. Stevens. A "loaded syringe" sits on the floor of the back seat. . . .

There was nothing special about the sentencing hearing. . . . The Sentencing Guidelines suggested a standard range sentence of restorative sanctions to 6 months in jail. The Court's sentence began at the high end of that range.

Tr. Ct. Op., at 1-2 (citations to record omitted). After finding Appellant's recusal issue waived, the court continued:

. . . [Appellant]'s real complaint is the manner in which this Court conducted the sentencing hearing. [Appellant] does not like the fact that the Court came to that portion of the proceeding with a preconceived notion as to what is fair and just and then articulated its thinking. The Court then solicited [Appellant], on more than one occasion to advance mitigating factors. [Appellant] identified the following mitigating factors: he took responsibility for his action; he did so very early in the process; matter does not involve a significant amount of drugs; he had not used the recently purchased drugs; he was currently employed; he has been addicted for 2 years; he is only a user; he took some very preliminary steps to address his addiction; he got a prescription to help him stop using; he is the father of a 3 year old; he goes to NA meetings; and he plans to attend treatment.

- 10 -

[Appellant]'s efforts at pushing this Court from its position of what it felt was a fair result simply did not work. The Court does not see anything wrong with the process used here. Based upon the information it had, at a finite point on a timeline, the Court expressed its view with full recognition that it had not yet heard from the defendant or his counsel. After listening, questioning and engaging in a critique of that information which was presented, this Court arrived at the same point it started at — [Appellant] is going to jail.

Let us pause for a moment and consider the following. The Court comes on the bench and announces to both counsel and the defendant — before hearing anything else — that probation is the appropriate sentence here and then adds, does anyone want to convince me otherwise? How is that process any different than that employed with [Appellant]? This Court sees none.

[Appellant]'s second argument trumpets the aforementioned mitigators and claims the Court abused its discretion in sentencing him. The flashpoint of controversy here is the persuasive value of the mitigating facts [Appellant] presented. Plain and simple — they were not persuasive. A few exchanges will make the point. [Appellant] said he has attended NA meetings. He failed to provide 3rd party proof. [Appellant] said he got a prescription to suppress his opiate desire 60 days before sentencing. Yet, he came to Court with opiates in his system. [Appellant] said he has taken steps to get treatment. When pressed for 3rd party confirmation, he had nothing. The Court imposed a fair, just and reasonable sentence given the circumstances of this case.

*Id.* at 3-4 (citations to record omitted).

Appellant presents the following issues for our review:

I. A court cannot impose a just sentence unless it has information about both the crime and the defendant. Where the lower court determined that Appellant was "going to jail" before hearing any evidence specific to him, and Appellant in turn objected to the lower court serving as his sentencer as a result of this predetermination, was the lower court wrong not to recuse itself or state why its impartiality cannot be reasonably questioned?

- 11 -

II. Appellant's sentencing guidelines recommended a sentence from probation to a minimum jail term of six months. Where the lower court prematurely announced its intention to jail Appellant before it heard any evidence from him, then, in fact, imposed a 6 to 12 month jail sentence after hearing Appellant's mitigating evidence, did the lower court manifestly abuse its discretion when it imposed sentence contrary to the fundamental norm that sentencing be individualized?

Appellant's Brief at 4.

### Recusal

In his first issue, Appellant claims that the sentencing judge should have either recused himself or have stated on the record why his impartiality could not be questioned. Appellant's Brief at 16-20. We have stated our standard of review as follows:

> This Court presumes judges of this Commonwealth are "honorable, fair and competent," and, when confronted with a recusal demand, have the ability to determine whether they can rule impartially and without prejudice. The party who asserts a trial judge must be disqualified bears the burden of producing evidence establishing bias, prejudice, or unfairness necessitating recusal, and the decision by a judge against whom a plea of prejudice is made will not be disturbed except for an abuse of discretion.

*Commonwealth v. Druce*, 848 A.2d 104, 108 (Pa. 2004) (some quotation marks and citations omitted); *accord Commonwealth v. Timchak*, 69 A.3d 765, 774 (Pa. Super. 2013).

The trial judge, in his Pa.R.A.P. 1925(a) opinion, concluded that Appellant's claim was waived because he was not explicitly asked to recuse himself during the sentencing proceeding. *See* Trial Ct. Op., 7/19/16, at 2.

- 12 -

The Commonwealth extensively reiterates that argument. **See** Commonwealth's Brief at 8-23. Appellant counters that his request for recusal was apparent from the record, based on the multiple objections he made against the court imposing sentence. Appellant's Brief at 19-20. Appellant argues that he "has found no authority in this Commonwealth requiring counsel to use the magic word 'recuse' to petition for a court's removal." **Id.** at 20 n.48 (citing **State v. Favors**, 43 So.3d 253, 261 (La. Ct. App. 2010), **writ denied**, 57 So.3d 909 (La. 2011)).[9]

We agree with the trial court that Appellant waived his recusal claim. Although a party has a right to request recusal where a judge's impartiality may reasonably be questioned, **Goodheart v. Casey**, 565 A.2d 757, 762 (Pa. 1989), "[i]t is well-settled that a party seeking recusal or disqualification must raise the objection at the earliest possible moment, or that party will suffer the consequence of being time barred," **Commonwealth v. Stafford**, 749 A.2d 489, 501 (Pa. Super.) (quotation marks and citation omitted), **appeal denied**, 795 A.2d 975 (Pa. 2000).

Moreover, a recusal request must be specific, because where no clear recusal motion is made, the trial judge may fail to engage in the

---

[9] We may consider the decisions of other states' courts, but they are not binding on us. **See Commonwealth v. Santarelli**, 483 A.2d 895, 900 (Pa. Super. 1984), **cert. denied**, 476 U.S. 1116 (1986).

independent analysis and self-reflection necessary to make a cognizable ruling on the motion. As our Supreme Court has explained:

> If a party questions the impartiality of a judge, the proper recourse is a motion for recusal, requesting that the judge make an independent, self-analysis of the ability to be impartial. If content with that inner examination, the judge must then decide whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary. This assessment is a personal and unreviewable decision that only the jurist can make. . . .

*Druce*, 848 A.2d at 108 (quotation marks and citations omitted).

> Under our law, a strong tradition has been established which recognizes that each judge has the primary responsibility for determining the validity of a challenge to his or her participation in a given matter.
>
> This view rests upon the sound premise that the jurist requested to recuse himself is the most capable to determine those factors hidden in the recesses of the mind and soul which would bear upon his or her capability to maintain the impartiality that each matter must receive. That exercise of conscience was intended to be aided by [Code of Judicial Conduct] Canon 3(C)[,] which provides some of the factors bearing upon such an evaluation.

*Goodheart*, 565 A.2d at 763 (citations omitted).

Because of the import of this analysis a judge must perform following a recusal motion, the motion must be clearly made on the record, and a judge is not obligated to infer that there is a recusal request from other complaints or objections made on the record. *See Commonwealth v. Hudson*, 820 A.2d 720, 727 (Pa. Super. 2003) (stating, "[the defendant] did not direct a motion for recusal to the trial judge following the court's rejection of his plea agreement, and we find no merit to his argument that a

recusal motion can somehow be inferred from his request to present the plea to a different judge"), *appeal denied*, 844 A.2d 551 (Pa. 2004); *see also Commonwealth v. Williams*, 69 A.3d 735, 749-50 (Pa. Super. 2013) (holding recusal issue waived because, although judge displayed prejudice warranting recusal at sentencing hearing, the sentencing hearing was held several months after the judge had disposed of an earlier recusal motion made at a violation of probation hearing, at which no prejudice was displayed), *appeal denied*, 83 A.3d 415 (Pa. 2014).

Here, Appellant repeatedly objected to the court's imposition of sentence on the ground that the court had pre-determined his sentence. But he made no motion for the judge's recusal, and the judge was not obligated to infer one. While Appellant's complaints could ring of judicial impartiality, they could also aptly be construed as a more general challenge to the court's application of the norms and rules regarding sentencing procedures, which is Appellant's next issue. Due to Appellant's failure to move specifically for recusal, the judge was not put on notice that he needed to engage in the reflection required by such a motion and to make a separate and definitive ruling about whether he should continue to preside in the case. Appellant's first issue therefore is waived.

## Individualized Sentence

As his second issue, Appellant claims that the court erred in not imposing an individualized sentence following his open guilty plea, and that

it instead decided that Appellant would receive a sentence of incarceration before the sentencing proceeding began.

When a defendant enters a guilty plea, the defendant waives the right to "challenge on appeal all non-jurisdictional defects except the legality of [the] sentence and the validity of [the] plea." **Commonwealth v. Pantalion**, 957 A.2d 1267, 1271 (Pa. Super. 2008) (citation omitted). However, the defendant retains the right to challenge the discretionary aspects of his sentence:

> **A defendant, who enters a guilty plea which does not involve a plea bargain designating the sentence to be imposed, cannot be said to have granted the sentencing court *carte blanche* to impose a discriminatory, vindictive or excessive sentence so long as the legal limits are not exceeded.** Obviously, the entry of a guilty plea does not preclude a petition for allowance of appeal of discretionary aspects of [a] sentence subsequently imposed.

**Commonwealth v. Dalberto**, 648 A.2d 16, 20 (Pa. Super. 1994) (emphasis in original; citation omitted), **appeal denied**, 655 A.2d 983 (Pa.), **cert. denied**, 516 U.S. 818 (1995); **accord Commonwealth v. Coles**, 530 A.2d 453, 457 (Pa. Super. 1987) (noting, "where a plea agreement is an **open one** as opposed to one for a negotiated sentence, unquestionably, after sentencing the defendant can properly request reconsideration as the court alone decided the sentence and no bargain for a stated term, agreed upon by the parties, is involved" (citation omitted)), **appeal denied**, 559 A.2d 34 (Pa. 1989). Therefore, despite his open plea of guilty, Appellant may

challenge the discretionary aspects of his sentence. *See Dalberto*, 648 A.2d at 20.

"[A] challenge to the discretionary aspects of a sentence is not appealable as of right." *Commonwealth v. Colon*, 102 A.3d 1033, 1042 (Pa. Super. 2014), *appeal denied*, 109 A.3d 678 (Pa. 2015); *see* Sentencing Code, 42 Pa.C.S. § 9781(b) (providing that this Court has discretion to allow an appeal of the discretionary aspects of a sentence only if the appeal presents a substantial question as to the sentence's propriety). Therefore, before we may exercise jurisdiction to reach the merits of Appellant's claim, we must verify that Appellant's appeal is properly before this Court — that is, that his appeal was timely filed and that the issues he seeks to raise were properly preserved. *Colon*, 102 A.3d at 1042-43. If so, we must then determine "whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence" pursuant to Appellate Rule 2119(f), and "whether th[at] concise statement raises a substantial question that the sentence is appropriate under the sentencing code." *Id.*[10] Only if the appeal

_____

[10] These requirements are both procedural and jurisdictional. Section 9781(b) of the Sentencing Code provides that the discretionary aspects of a sentence may be challenged only by a petition for allowance of an appeal. To "maintain[] consistency between practice under this section of the Sentencing Code and typical appellate practice in Superior Court, which does not ordinarily have discretion as to the exercise of its jurisdiction," the Supreme Court, in effect, provided for the petition for allowance of appeal to

*(Footnote Continued Next Page)*

satisfies these requirements may we proceed to decide the substantive merits of Appellant's claim. ***Id.*** at 1043.

By filing a timely appeal and making several objections to the conduct of the sentencing proceeding during that proceeding, Appellant fulfilled the first two of these requirements.[11] In addition, Appellant's brief includes a Rule 2119(f) statement setting forth the reasons we should allow an appeal regarding the discretionary aspects of his sentence. We therefore turn to the

*(Footnote Continued)* ───────────────

be accomplished by a two-part process: the filing of a notice of appeal, and the inclusion of a Rule 2119(f) statement at the time of briefing. ***See Commonwealth v. Tuladziecki***, 522 A.2d 17, 19 (1987). The Rule 2119(f) statement enables this Court to make a preliminary determination whether the appellant raises a substantial sentencing question that merits review, before actually addressing the merits of that question. ***See id.*** at 19-20.

[11] Appellant properly preserved his sentencing issue even though he failed to file a post-sentence motion. The filing of a post-sentence motion is "optional," Pa.R.Crim.P. 720(B), and "[i]ssues raised before or during trial shall be deemed preserved for appeal whether or not the defendant elects to file a post-sentence motion on those issues." ***Id.*** 720(B)(1)(c). This rule applies to the preservation of issues related to the discretionary aspects of a sentence. ***See Commonwealth v. McAfee***, 849 A.2d 270, 275 (Pa. Super.) ("[i]ssues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion ***or by presenting the claim to the trial court during the sentencing proceedings***. . . . Absent such efforts, an objection to a discretionary aspect of a sentence is waived" (emphasis added; quotation marks and citation omitted)), ***appeal denied***, 860 A.2d 122 (Pa. 2004); ***see also*** Pa.R.Crim.P. 720, cmt. ("Issues properly preserved at the sentencing proceeding need not, but may be raised again in a motion to modify sentence in order to preserve them for appeal. In deciding whether to move to modify sentence, counsel must carefully consider whether the record created at the sentencing proceeding is adequate for appellate review of the issues, or the issues may be waived"). Here, the persistent and conspicuous objections made by Appellant's counsel during the sentencing proceeding placed Appellant's second issue before the trial court in the first instance, and preserved that issue for appellate review.

final requirement: whether the question raised by Appellant is a substantial question meriting our discretionary review.

"A defendant presents a substantial question when he sets forth a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process." *Commonwealth v. Dodge*, 77 A.3d 1263, 1268 (Pa. Super. 2013) (quotation marks and citation omitted), *appeal denied*, 91 A.3d 161 (Pa. 2014). One of the fundamental norms in the sentencing process is that a defendant's sentence be individualized. As our Supreme Court explained in *Commonwealth v. Devers*, 546 A.2d 12 (Pa. 1988):

> The philosophy of indeterminate or individualized sentencing was explicitly recognized by the Pennsylvania Legislature early in this century. Courts are not permitted to mete out punishment based on the mere fact of the crime. On the contrary, sentencing must result both from a consideration of the nature and circumstances of the crime as well as the character of the defendant.

546 A.2d at 13 (footnote omitted). Thus, "a sentencing court abuses its discretion when it considers the criminal act, but not the criminal himself." *Commonwealth v. Wright*, 600 A.2d 1289, 1291 (Pa. Super. 1991) (quotation marks and citation omitted). The Sentencing Code prescribes individualized sentencing by requiring the sentencing court to consider the protection of the public, the gravity of the offense in relation to its impact on the victim and the community, and the rehabilitative needs of the defendant, *Commonwealth v. Swope*, 123 A.3d 333, 338 (Pa. Super. 2015) (citing 42 Pa.C.S. § 9721), and prohibiting a sentence of total confinement without

consideration of "the nature and circumstances of the crime[,] and the history, character, and condition of the defendant," 42 Pa.C.S. § 9725.

In **Devers**, the Supreme Court set forth the following regarding the two-part duty of sentencing judges:

> The first responsibility is a fact-finding responsibility: the judge must be sure he had enough information. The second responsibility is an application-and-explanation responsibility: the judge must apply to the information he has gathered the guidelines specified in the Sentencing Code, 42 Pa.C.S. § 9701 *et seq*., and explain how the sentence he has selected is responsive to, and reflects the standards embodied in, those guidelines. If the judge fails to fulfill these responsibilities, we must vacate the sentence and remand for resentencing.

**Devers**, 546 A.2d at 16 (citation omitted). When a court disregards its first function by failing to investigate and consider the character of the defendant, and fashioning a sentence based solely on the nature of the crime, the court fails "to exercise its broad discretion in accordance with the applicable statutory requirements." **Commonwealth v. Martin**, 351 A.2d 650, 657–58 (Pa. 1976) (footnote omitted).

For example, in **Commonwealth v. Goggins**, 748 A.2d 721, 729 (Pa. Super.), **appeal denied**, 759 A.2d 920 (Pa. 2000), the sentencing court conducted only a seven-question colloquy of the defendant prior to imposing sentence, and it ordered no PSI report. 748 A.2d at 729. We vacated the sentence, because —

> the court imposed sentence without considering sufficient and accurate information about the defendant . . . .

\* \* \*

[A] sentencing judge must either order a PSI report or conduct sufficient presentence inquiry such that, at a minimum, the court is apprised of the particular circumstances of the offense, not limited to those of record, as well as the defendant's personal history and background.

*Id.* at 728 (citation omitted).

Even though a full sentencing proceeding may be held, when a sentence is pre-determined based on the facts of the crime, the sentence must be vacated. For example, in *Martin*, three judges agreed in advance to impose identical sentences on six different defendants who were involved in the sale of heroin. *Martin*, 351 A.2d. at 651. Even though the trial court heard mitigating evidence and argument,[12] our Supreme Court held that "[t]he procedures employed by the sentencing court . . . ignore[d] the basic premises of Pennsylvania individualized sentencing," and it vacated the sentences. *Id.* at 657, 659.

Similarly, in *Commonwealth v. Knighton*, 415 A.2d 9, 11-12 (Pa. 1980), the sentencing court held a hearing at which defense counsel presented mitigating factors and the defendant exercised his right of allocution. However, in an attempt to avoid bias against the defendant, the

---

[12] Before imposing sentence on one of the defendants, and in response to mitigating evidence relative to that defendant, the trial court stated, "[Defendant] was found guilty here of sales and we treated the others the same way. . . . The court has already determined it's three to ten years is [w]hat it's going to do. Why should I do any different in this case?" *Id.* at 652–53.

judge imposed a sentence recommended in advance by a "sentencing council" of his colleagues. 415 A.2d at 12. Our Supreme Court vacated the sentence, saying that it was an "empty gesture" to allow the defendant to speak when his sentence had already been determined. ***Id.*** at 12-13; ***see also Commonwealth v. Coulverson***, 34 A.3d 135, 150 (Pa. Super. 2011) (holding that even though the sentence imposed was in the standard guidelines range and followed a PSI and sentencing hearing, it had to be vacated because it was not individualized to the defendant and was based on the severity of the crime alone; the court only perfunctorily acknowledged the PSI and made no discussion of the defendant's "life, his cooperation and remorse, his attempts at reclaiming a productive role in society, or the possibility that . . . he might succeed at rehabilitation").[13]

---

[13] Under this same reasoning, standardized sentences based on a class of crimes or criminals are prohibited. As we explained in ***Commonwealth v. Mola***, 838 A.2d 791 (Pa. Super. 2003),

> Imposing a standardized sentence on all drug offenders is a manifest abuse of discretion. Pennsylvania has long endorsed a policy of indeterminate, individualized sentencing. That policy is incompatible with a one-size-fits-all sentence. In effect, the trial court [must not choose] the maximum sentence based on seriousness of the crime alone, which is impermissible. The trial court must consider each crime and each defendant in light of the total circumstances and fashion an appropriate sentence.

838 A.2d at 794 (citations omitted) (vacating sentence that was imposed as part of a blanket policy aimed at deterrence of drug offenders); ***see also Commonwealth v. Franklin***, 446 A.2d 1313, 1318 (Pa. Super. 1982) ("The court cannot impose a sentence pursuant to any predetermined policy").

A claim that a sentencing court ignored the foregoing mandates and sentenced a defendant without taking into account his or her character and background therefore raises a substantial question that the sentence is inappropriate under the Sentencing Code. **See Goggins**, 748 A.2d at 727-28. Here, Appellant argues that the court determined his sentence prior to the sentencing hearing, thereby violating the fundamental norm that Appellant's sentence be individualized. This argument raises a substantial question which we now review on the merits. **Id.**[14]

Our standard of review follows: "Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be

---

[14] We note that Appellant does not claim merely that specific sentencing facts of record were not considered or were inappropriately considered by the court; rather, Appellant alleges that the court pre-determined Appellant's sentence, and therefore did not give meaningful consideration to **any** of the sentencing factors in specific relation to Appellant. This is an important distinction, because where a sentence falls within the guidelines (as Appellant's does), an argument that the trial court failed to consider or did not accord appropriate weight to various sentencing factors does not necessarily raise a substantial question. In **Dodge**, 77 A.3d at 1272 n.8, we observed:

> [T]his Court's determination of whether an appellant has presented a substantial question in various cases has been less than a model of clarity and consistency, even in matters not involving excessive sentence claims. . . . Careful litigants should note that arguments that the sentencing court failed to consider the factors proffered in 42 Pa.C.S. § 9721 does present a substantial question whereas a statement that the court failed to consider facts of record, though necessarily encompassing the factors of § 9721, has been rejected.

**See also Swope**, 123 A.3d at 339.

- 23 -

disturbed on appeal absent a manifest abuse of discretion." ***Commonwealth v. Bricker***, 41 A.3d 872, 875 (Pa. Super. 2012) (citation omitted). "In order to establish that the sentencing court abused its discretion, [the defendant] must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." ***Williams***, 69 A.3d at 741 (quotation marks and citation omitted). "The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." ***Id.*** at 740 (quotation marks and citation omitted). To determine whether the trial court made the proper considerations during sentencing, "an appellate court must, of necessity, review all of the judge's comments." ***Commonwealth v. Bethea***, 379 A.2d 102, 106 (Pa. 1977); ***see also Commonwealth v. Ritchey***, 779 A.2d 1183, 1187 (Pa. Super. 2001) ("As this Court has stated, the judge's statement must clearly show that he has given individualized consideration to the character of the defendant" (quotation marks and citation omitted)).

Our careful review of the record convinces us that the trial court manifestly abused its discretion by pre-determining Appellant's sentence without considering individualized factors regarding appellant. We therefore

conclude that the sentence must be vacated. We reach our conclusion for three interrelated reasons.

First, the trial judge announced his intention to incarcerate Appellant prior to the commencement of Appellant's sentencing proceeding and before receiving any individualized information about Appellant. While addressing Appellant's co-defendant, Mr. Buckner, during Mr. Buckner's sentencing proceeding, the judge referred to Appellant and told Mr. Buckner in open court: "He is going to jail, too. He is not walking out of here either." N.T. at 22. Then, when Appellant's counsel suggested that the court "was inclined to send [Appellant] to jail," the court interjected: "I am going to send him to jail. Let's not have any equivocation. He is going to jail, because he and the guy who went to jail, they are both opposite sides of the same coin. That's why he is going to jail, because he creates the guy that is with him." *Id.* at 28. The court thus made its intention clear and unequivocal; without hearing any evidence about Appellant or his circumstances, it planned to send Appellant to jail.

In its Rule 1925(a) opinion, the court presented a slightly different description of what happened at the sentencing hearing. The court said it had entered the hearing "with a preconceived notion as to what is fair and just and then articulated its thinking," which it "expressed . . . with full recognition that it had not yet heard from the defendant or his counsel." Tr. Ct. Op. at 3. The court said it then listened to Appellant's presentation and

"arrived at the same point it started at — [Appellant] is going to jail." *Id.* The court said it reached that conclusion because "the mitigating facts [Appellant] presented . . . were not persuasive." *Id.*

Although we acknowledge the trial court's explanation, we cannot ignore the hearing transcript, which discloses that the court stated repeatedly and unequivocally before receiving any evidence at Appellant's hearing: "He [Appellant] is going to jail, too"; "He [Appellant] is not walking out of here either"; "I am going to send him [Appellant] to jail;" "He [Appellant] is going to jail, because he and [his co-defendant] are both opposite sides of the same coin"; "he [Appellant] is going to jail, because he creates the guy that is with him." N.T. at 22, 28. There was no indication in these statements that the court was floating ideas about a tentative possible sentence that might be subject to change upon receiving evidence. Indeed, even though the Sentencing Guidelines made probation a standard range sentence, there is no indication in the transcript that the court gave probation any serious consideration at all; the only expressed intent was to impose jail time.[15]

---

[15] As reflected in the transcript, this case thus stands in contrast to that where a sentencing judge who, in light of past experience sentencing defendants for similar crimes, enters a sentencing proceeding with a preliminary idea of an appropriate sentence for someone who has engaged in such a crime and who has a similar prior record score. Such a judge still would have an open mind about what sentence to impose in the case before him once he received the actual evidence. Here, the court did not express a

*(Footnote Continued Next Page)*

In this situation, the mere fact that the court listened to Appellant's presentation of mitigating factors does not mean that it gave Appellant's sentence appropriate individualized consideration. The court's own Rule 1925(a) opinion makes clear that the court afforded Appellant an opportunity to argue not so that it could use Appellant's information to craft an appropriate individualized sentence, but, at most, to see if Appellant could rebut the court's "preconceived notion" of the sentence the court already had decided to impose. In these circumstances, the sentence was invalid. **_See Devers_**, 546 A.2d at 16; **_Martin_**, 351 A.2d. at 653-54, 657-59. **_See also Knighton_**, 415 A.2d at 12-13 (stating defendant's allocution was a meaningless gesture when sentence had been pre-determined).

Second, the court gave an explanation of its sentencing decision that made clear that the decision was based on factors other than individualized information about Appellant. The court explained its sentence in terms of a "two sides of the same coin" theory of drug cases. As the court stated at the beginning of its Rule 1925(a) opinion —

> Mr. Luketic is a drug addict. He buys heroin and then consumes this poison. But, the poison is not self-centered. His purchase of this product allows others — like his co-defendant — to sell this modern day plague. Both the buyer and the seller deserve punishment.

Tr. Ct. Op. at 1. And during the sentencing hearing, the court told Appellant:

_(Footnote Continued)_ _____

mere preliminary idea. Rather, it stated at the beginning of Appellant's proceeding: "Let's not have any equivocation. He is going to jail." N.T. at 28.

> We are here imposing sentencing for cases in which you pled guilty to, because we have a heroin epidemic in this region. We have people who sell dope. We have people who use dope. We have people who drive people to get dope, and they disseminate it throughout the county. I don't believe they are independent. I believe they are all a part of the same animal. Everyone is going to take some share of fat in the game, including you.

*Id.* at 35-36. Thus, after sentencing Appellant's co-defendant (Mr. Buckner, the drug dealer) to jail, the court stated: "[Appellant] is going to jail, because he and [his co-defendant] who went to jail, they are both opposite sides of the same coin. That's why he is going to jail, because he creates the guy that is with him." N.T. at 28.

The court therefore imposed a sentence of incarceration because drug addicts like Appellant create a market for drug dealers like Mr. Buckner and thereby feed the "modern day plague" of drug abuse; because Mr. Buckner was sentenced to incarceration, Appellant — the opposite side of the same coin — would be incarcerated too. But it is an abuse of discretion when "the nature of the criminal act [is] used as the sole basis for the determination of the length of sentence." *Martin*, 351 A.2d at 657–58. It also is an abuse of discretion to base one defendant's sentence on the sentence imposed on another defendant. *See Coulverson*, 34 A.3d at 147 (stating, "individualized sentencing remains the controlling norm of the sentencing process and . . . a sentence befitting one defendant may not befit another"); *Commonwealth v. Kalson*, 446 A.2d 1320, 1322 (Pa. Super. 1982) ("Neither the governing statute on sentencing nor the controlling case law

require, or even suggest, that a sentencing judge should consider sentences imposed on other defendants in that county for the same crime" (footnote omitted)). Here, by using its two-sides-of-the-coin theory of sentencing, the trial court did both, and its sentence therefore is invalid.

Finally, there is no basis for us to conclude that individualized factors entered into the trial court's sentencing calculus at all. The court did tell Appellant, in an apparent reference to treatment programs, "When you leave. We are going to get you some help" and "Hopefully you'll get some intervention while you are [in county prison]." N.T. at 36-37. But there is no evidence that the court designed its sentence to obtain drug treatment for Appellant or otherwise to address his rehabilitative needs as a drug addict. The court did not mandate any sort of drug treatment as one of its sentencing conditions. **See** Order of Sentence, 6/1/16.

Nor can we assume that the court was guided by some unspoken plan to sentence Appellant in light of his specific needs. If the court had a pre-sentence report about Appellant, we would "presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." **Devers**, 546 A.2d at 18. But so far as we can determine from the record, there was no PSI report here. Nor was there any other significant gathering of relevant information that the court then employed in its decision. **See** **Goggins**, 748 A.2d at 728 (in absence of PSI, court must "conduct sufficient

presentence inquiry such that, at a minimum, the court is apprised of . . . the defendant's personal history and background"); **accord Commonwealth v. Flowers**, 950 A.2d 330, 333 (Pa. Super. 2008) (need for "sufficient information during the colloquy to substitute for a PSI report, thereby allowing a fully informed sentencing decision").

At the hearing, the court engaged in sufficient interrogation of Appellant to confirm its view that Appellant had not done enough to cure his addiction. **See** Tr. Ct. Op. at 3-4; N.T. at 31-35. But the court never explained whether or how that view informed its steadfast decision that "[Appellant] is going to jail." N.T. at 22. Rather, as noted, the court's only explanation of that result was based on factors unrelated to individualized sentencing: "[Appellant] is going to jail, because he and [his co-defendant] are both opposite sides of the same coin" and "because he creates the guy that is with him." **Id.** at 28. The record provides no basis to conclude that the court's reason for imposing the jail sentence was anything other than what the court said at the hearing.

For all of these reasons, the trial court's sentencing of Appellant failed to follow the requirements of the Sentencing Code and the decisions of the Supreme Court and this Court regarding individualized sentencing. The sentence therefore is invalid. Accordingly, we vacate the judgment of sentence.

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/16/2017