J-S16040-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ISAIAH CIPRIAN LOPEZ | : | |
| | : | |
| Appellant | : | No. 1402 EDA 2022 |

Appeal from the Judgment of Sentence Entered September 17, 2020
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0000772-2020, CP-39-CR-0005025-2019


BEFORE:   DUBOW, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                    **FILED NOVEMBER 7, 2023**

Isaiah Ciprian Lopez (Appellant) appeals from the judgment of sentence entered in the Lehigh County Court of Common Pleas, following his guilty plea to murder in the third degree at trial docket CP-39-CR-0005025-2019 (Docket 5025).[1]  We note that on April 14, 2022, the trial court modified Appellant's

---

[1] 18 Pa.C.S. § 2502(c).  On the same day of his plea, Appellant also entered a guilty plea to an unrelated charge of theft by deception, 18 Pa.C.S. § 3922(a)(1), at trial docket CP-39-CR-0000772-2020 (Docket 772).  The trial court's subsequent post-sentence orders (discussed *infra*) included both docket numbers.  Appellant filed separate notices of appeal at each docket, and both docket numbers appear in the caption of this appeal.  Nevertheless, we note Appellant's issue on appeal goes solely to his murder in the third degree sentence.  **See** Pa.R.A.P. 341; **Commonwealth v. Walker**, 185 A.3d 969, 972 (Pa. 2018) (when "one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeals must be filed"), *citing* Pa.R.A.P. 341, *cmt*.  **See also Commonwealth v. Young**, 265 A.3d 462, 477 & n.19 (Pa. 2021) (emphasis
*(Footnote Continued Next Page)*

sentence, following hearings on post-sentence motions, to the present sentence of 17 to 40 years' imprisonment. Appellant now argues the court erred in denying his motion for recusal, where the court allegedly applied an improper "blanket" policy of harsher sentencing in all cases involving gun violence. We affirm.

## I. Facts & Guilty Plea

The Commonwealth presented the following factual synopsis at Appellant's plea hearing: "throughout the day" on July 12, 2019, behind St. Luke's Lutheran Church in Allentown, Lehigh County, there had been a number of people "engaged in altercations and fights for various reasons."[2] N.T. Guilty Plea, 8/14/21, at 10. The victim in this case, Lauren Gonzalez, along with her boyfriend, sold drugs in a nearby residence. *Id.* The victim yelled at those in the street to stop fighting, as it was "bad for [her] business," and some — including Appellant's brother, Josiah Lopez (Brother) — responded in verbal argument. *Id.* at 11. The victim "smack[ed]" Brother, and then got into a

_____

omitted) (reaffirming ***Walker***'s pronouncement that proper Rule 341(a) practice "is to file separate appeals from an order that resolves issues arising on more than one docket[,]" but expressly overruling those statements in the opinion indicating "[t]he failure to do so requires the appellate court to quash the appeal," and holding, "where a timely appeal is erroneously filed at only one docket, [Pa.R.A.P.] 902 permits the appellate court, in its discretion, to allow correction of the error, where appropriate.").

[2] The Commonwealth noted Appellant was not at that location during "most of the fights," but arrived "toward the tail end." N.T., 8/14/21, at 11.

physical altercation with Appellant. *Id.* At this time, the victim's "friend"[3] hit Appellant with a bottle. *Id.* Appellant "pull[ed]" a gun, which he had brought with him. *Id.* The victim left the street and went to the church parking lot, while Appellant "position[ed] himself in the street." *Id.* at 11-12. The victim exclaimed to her boyfriend, "[G]o get the gun." *Id.* at 12. The boyfriend returned to the house, and "[t]here are various accounts of what happen[ed] next, some of it . . . caught on film." *Id.* at 12. However, it is not disputed that Appellant fired his gun, and the bullet struck the victim in the chest, killing her.[4] *Id.*

Appellant was charged with homicide generally. N.T., 8/14/21, at 3. He retained private counsel, James Katz, Esquire (Sentencing Counsel), who negotiated his surrender to police. *Id.* at 13; N.T., 4/7/22, at 6-7. In a statement to police, Appellant admitted he and Brother were in verbal and physical altercations with others that day, and that he (Appellant) brandished a gun. N.T., 8/14/21, at 13. Appellant stated he stepped away "from the fray," saw the victim and her boyfriend, and believed the boyfriend was getting a gun. *Id.* Appellant stated he heard gunshots, but did not see who

---

[3] It is not clear whether this "friend" was the victim's boyfriend. *See* N.T., 8/14/21, at 11.

[4] Brother was also charged with aggravated assault for shooting the victim's boyfriend, who survived. *See* N.T., 8/14/21, at 15; N.T. Motion to Reconsider, 4/7/22, at 11. Subsequently, Sentencing Counsel explained he represented both Appellant and Brother. N.T., 4/7/22, at 12.

was shooting, and tried to shoot the boyfriend, but accidentally shot the victim. *Id.* at 13-14. Sentencing Counsel stated there were additionally statements that "somebody was firing shots from [the] drug house." *Id.* at 14.

On August 14, 2020, Appellant appeared before the trial court and entered a negotiated guilty plea to murder in the third degree. As noted above, at the same proceeding, Apepllant also pleaded guilty to theft by deception at unrelated Docket 772.

## II. Original Sentencing Hearing

On September 17, 2020, the trial court conducted sentencing in this case and at Docket 772. The court stated it reviewed the presentence investigation report (PSI), and it noted the offense gravity score (14) for the third degree-murder conviction, Appellant's prior record score of 0, and the standard range guideline of 90 to 240 months' imprisonment. N.T. Sentencing, 9/17/20, at 2, 4. Sentencing Counsel argued this was "a very difficult case," where: Appellant was 21 years old;[5] the victim and her boyfriend "created the confrontation" by complaining and hitting people; and Appellant was remorseful, had turned himself in, admitted to the shooting, and was cooperative with the police. *Id.* at 6-7, 9-10. The trial court clarified that Appellant had the gun on his person. *Id.* at 7-8. Appellant's mother and

_____

[5] Appellant was 20 years old at the time of the shooting.

father acknowledged his wrongdoing, and Appellant apologized to the victim's family. *Id.* at 8-9, 11.

The trial court imposed a sentence of 18 to 40 years' imprisonment for the third degree-murder count, a sentence within the standard range.[6] We review the court's statements in detail, as they are relevant to the arguments on appeal:

> [Appellant], and to your parents, I think you have done reckless acts to punish yourself by a reckless, thoughtless, unsafe pattern of behavior on the night in question. I don't doubt that you play an important role in your family, and those responsibilities should have been foremost in your mind instead of reacting the way you did on this night in question.
>
> **There is too much gun violence in Allentown, and I have determined that if a person is convicted before me, I have to convey to the community, to the defendant, and those who would think about engaging in gun violence that there will be a certain level of punishment.**
>
> It does not matter that a victim was not of a pristine quality. There should be no detrimental impact to the severity of the offense because someone may have been involved in what were the reportedly illegal conduct themselves. That doesn't justify what you did. It doesn't excuse what you did.
>
> And I think the prosecution may have afforded you the leniency to plead to third degree murder instead of pursuing a first degree conviction.
>
> Too many times people decide in our community that the only to way to resolve difference is through using guns to somehow protect themselves. And frankly, there is no reason you had to resort to that. You should have just left the scene, called the

---

[6] As to the theft by deception count at Docket 772, the trial court imposed one to two years' imprisonment, to run concurrently. N.T., 9/17/20, at 13-14.

police, done whatever. We try to encourage people to engage in a lawful pattern of conduct, which you chose not to do.

So as a result, I have to sentence you based upon the nature of the offense. I will take into account the relatively minor prior record you have, your age, and the fact that you cooperated with the police to some degree.

*See* N.T., 9/17/20, at 11-12 (paragraph breaks & emphasis added).

### III.  Post-Sentence Proceedings

Appellant did not initially file a post-sentence motion or direct appeal. On February 12, 2021, he filed a timely, *pro se* Post Conviction Relief Act[7] (PCRA) petition. Subsequently appointed counsel filed an amended petition, and on October 12th, the trial court granted relief in part, by reinstating both post-sentence and direct appeal rights *nunc pro tunc*.

On October 22, 2021, Appellant filed the underlying, counseled post-sentence motion, arguing for, *inter alia*, the recusal of the trial judge, for allegedly applying a blanket sentencing policy on crimes involving gun violence, without consideration of the proper sentencing factors. Appellant also requested, in the alternative, modification of his sentence, in light of his cooperation with the authorities.

The trial court first held a hearing on February 4, 2022, on the recusal claim only. On February 15th, it entered an order denying relief, denying it

---

[7] 42 Pa.C.S. §§ 9541-9545.

had applied any blanket policy, and instead, it considered the issue of gun violence as one of several relevant factors in sentencing.

Next, the trial court held a hearing on April 7, 2022, on Appellant's excessive sentence claim. Appellant called Sentencing Counsel, who testified Appellant turned himself in and agreed to give a full statement, in exchange for a reduction of the charges to third degree-murder and a maximum sentence of 20 years. N.T., 4/7/22, at 7. Additionally, an investigator with the Public Defenders' Office testified that Appellant admitted he fired at the victim's boyfriend, but the victim "got in the way." *Id.* at 27. "It was a little confusing" as to who shot whom, as there were a "lot" of witnesses, some who identified Appellant as the shooter, some identified Brother, and "some both." *Id.* at 28-29. Additionally, there was "a big crowd around the two victims" and some individuals touched the evidence. *Id.* at 28. Sentencing Counsel testified that Appellant's cooperation and statement to police "made the case for the" Commonwealth, as there might have been reasonable doubt as to whether it was Appellant who shot the victim. *Id.* at 11.

The trial court took the matter under advisement, and on April 14, 2022, granted a one year-downward modification of the minimum sentence for third degree-murder.[8] The amended sentence was thus 17 to 40 years'

---

[8] The text of the order, as well as the "filed" time stamp, bear a date of April **20**, 2022. However, the trial docket entry for this order states it was served on April **14**, 2022. For ease of review, we cite the trial docket date.

imprisonment. Appellant filed a timely notice of appeal and, following two extensions of time, complied with the order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

## IV. Statement of Question Involved & Standard of Review

Appellant presents one issue for our review:

Whether the [trial] court abused its discretion by failing to recuse itself from this case based upon the comments made by that court regarding [Appellant's] case and charge?

Appellant's Brief at 4.

At this juncture, we consider the applicable standard of review:

This Court presumes judges of this Commonwealth are "honorable, fair and competent," and, when confronted with a recusal demand, have the ability to determine whether they can rule impartially and without prejudice. The party who asserts a trial judge must be disqualified bears the burden of producing evidence establishing bias, prejudice, or unfairness necessitating recusal, and the decision by a judge against whom a plea of prejudice is made will not be disturbed except for an abuse of discretion.

*Commonwealth v. Luketic*, 162 A.3d 1149, 1157 (Pa. Super. 2017) (citation omitted).

## V. Analysis

On appeal, Appellant avers the trial court abused its discretion in denying his motion for recusal. He relies on the court's comment at the original sentencing hearing:

There is too much gun violence in Allentown, and I have determined that if a person is convicted before me, I have to convey to the community, to the defendant , and those who would

- 8 -

think about engaging in gun violence that there will be a certain level of punishment.

Appellant's Brief at 9-10, *quoting* N.T., 9/17/20, at 11-12. Appellant acknowledges the discussion in the trial court's opinion, that "the comment was nothing more than a passing statement [and] did not set forth a fixed reason for sentencing." Appellant's Brief at 12. Nevertheless, Appellant maintains the statement "was more than just a generalized comment about the scourge of gun violence," and instead it was a clear statement that cases involving gun violence "will automatically necessitate a harsher sentence." *Id.* Appellant requests a new sentencing hearing before a different trial judge. *Id.* We conclude no relief is due.

> This Court has explained: a motion for recusal is a request to
>
> the judge [to] make an independent, self-analysis of the ability to be impartial. If content with that inner examination, the judge must then decide whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary. This assessment is a personal and unreviewable decision that only the jurist can make. . . .
>
> Under our law, a strong tradition has been established which recognizes that each judge has the primary responsibility for determining the validity of a challenge to his or her participation in a given matter.

*Luketic*, 162 A.3d at 1158 (citations omitted).

With respect to sentencing, this Court has stated that a "fundamental norm[ ] in the sentencing process is that a defendant's sentence be individualized." *Luketic*, 162 A.3d at 1160 (citation omitted). "The

Sentencing Code prescribes individualized sentencing by requiring the sentencing court to consider the protection of the public, the gravity of the offense in relation to its impact on the victim and the community, and the rehabilitative needs of the defendant." *Id.* at 1161, *citing*, *inter alia*, 42 Pa.C.S. § 9721(b). When a court fails "to investigate and consider the character of the defendant, and [instead fashions] a sentence based solely on the nature of the crime, the court fails 'to exercise its broad discretion in accordance with the applicable statutory requirements.'" *Luketic*, 162 A.3d at 1161 (citation omitted). Additionally, "where the sentencing judge had the benefit of a [PSI], it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Clemat*, 218 A.3d 944, 960 (Pa. Super. 2019) (citation omitted).

In the order denying Appellant's motion for recusal, the trial court rejected the contention that it had a blanket policy to impose harsher sentences on firearms offenses, regardless of any other sentencing factor. Order, 2/15/22, at 2-3 n.2. The court acknowledged the established standard in Pennsylvania for individualized sentencing. *Id.* at 3 n.2. The court reasoned that its reference, to "too much gun violence in Allentown," was relevant to a proper consideration of the public welfare and gravity of Appellant's offense. *Id.* The court explained it had considered all the information presented in Appellant's PSI, as well as his character, and it had

imposed a sentence that was individualized for him. *Id. See also* Trial Ct. Op., 9/6/22, at 8.

We agree. The court's reference, to the amount of gun violence in Allentown, was but one factor articulated. *See* N.T., 9/17/20, at 11-12. The court noted Appellant could have simply left the scene, but also specifically considered his "relatively minor" prior record, his age, and his cooperation with the police. *Id.* at 12. Appellant acknowledges the original sentence was within the guideline range. Appellant's Brief at 10. We further note the trial court had, following a post-sentence hearing, reduced the minimum sentence of his third degree-murder by one year, and did not disturb the unrelated theft by deception sentence (one to two years), which had been ordered to run concurrently.

Finally, we agree with the trial court that *Commonwealth v. Mola*, 838 A.2d 791 (Pa. Super. 2003) — on which Appellant relied in his post-sentence motion and on appeal — is distinguishable. In that case, the defendant pleaded guilty to two counts of delivery of a controlled substance, and the trial court imposed two concurrent terms of two to 15 years' imprisonment. *Id.* at 792. The 15 year-term was the statutory maximum, and the court had stated its intent to impose the statutory maximum on "anybody" engaged in drug dealing in Berks County, and furthermore to impose the maximum sentence "from now on." *Id.* at 792-93, 794. On appeal, this Court held the trial court abused its discretion in applying a blanket policy, in **all** drug delivery cases,

to impose the statutory maximum, to the exclusion of fashioning individualized sentences. *See id.* at 794.

Here, the trial court's reference to "too much gun violence in Allentown" was not accompanied by any avowal to always impose a particular sentence, regardless of the unique circumstances of a case. *See* N.T., 9/17/20, at 11. Instead, the court considered this factor in terms of the protection of the public, and in conveying a message to the community and Appellant. However, as emphasized above, the trial court properly considered other factors, including the information presented in the PSI. *See id.* at 2, 11-12.

For all the foregoing reasons, we find no abuse of discretion in the court's denial of Appellant's recusal motion, where the totality of the court's comments at sentencing did not expose bias or prejudice, nor create the appearance of impropriety. *See Luketic*, 162 A.3d at 1157-58.

### VI. Conclusion

In conclusion, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>11/7/2023</u>

- 12 -