J-S50005-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| DEJUAN ONZA WINDOM | : | |
| Appellant | : | No. 1355 WDA 2017 |

Appeal from the Judgment of Sentence August 10, 2017
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0001216-2016

BEFORE: BOWES, J., OTT, J., and KUNSELMAN, J.

MEMORANDUM BY BOWES, J.: FILED DECEMBER 27, 2018

DeJuan Onza Windom appeals from the judgment of sentence of twenty to forty years imprisonment imposed following his non-jury conviction of third-degree murder. We affirm.

The trial court offered the following summary of the facts established at trial.

> [O]n November 28, 2015 at approximately 2:00 a.m. [Appellant] stabbed his girlfriend, Margaret Recasens, three times on a sidewalk in the Carrick section of the City of Pittsburgh. Ms. Recasens was found on the sidewalk on the 1800 block of Brownsville Road. Brittany Bujanowski testified that she was an acquaintance of [Appellant]. She and [Appellant] resided in Monessen, Pennsylvania. Ms. Bujanowski testified that [Appellant] contacted her on November 27, 2015 and asked her to give him a ride later that night. She did not know where [Appellant] wanted to go. Later, during the night of November 27, 2015, Ms. Bujanowski drove [Appellant] to the Carrick section of the City of Pittsburgh, in a car procured by [Appellant], so [Appellant] could see his girlfriend.

[Appellant] provided directions to Ms. Bujanowski. When they arrived in Carrick, Ms. Bujanowski parked the car. [Appellant] exited the car, walked across the street and met Ms. Recasens. Ms. Bujanowski knew Ms. Recasens because Ms. Recasens had previously resided in Monessen. Ms. Bujanowski observed [Appellant] and Ms. Recasens argue. Ms. Bujanowski then observed [Appellant] pull out a knife and stab Ms. Recasens multiple times. [Appellant] returned to the car and told Ms. Bujanowski to "mind her own business." He then directed her to return to Monessen. While on the way to Monessen, [Appellant] gave the knife to Ms. Bujanowski and, in a threatening manner, told her to throw it out the window. She complied. They returned to Monessen. Ms. Bujanowski testified that she did not share this story with authorities because she feared for her own safety.

Videotaped surveillance from the area recorded the stabbing. Evidence of data from cell phone towers near the scene of the stabbing was also introduced. The cell phone data established that [Appellant] had travelled to Carrick from Monessen roughly between 1:00 a.m. and 2:00 a.m. The data established that his cell phone remained in the area of the stabbing for an extended period of time. It also established that his cell phone had begun a return trek to Monessen after 2:17 a.m.

Evidence was also developed that Ms. Recasens had recently began prostituting herself for money by using an online message/advertising site called "Back Page." [Appellant] was unhappy with Ms. Recasens' prostitution activities. Text messages recovered during the investigation disclosed that [Appellant] had created an alternative profile and that he had set up a meeting with Ms. Recasens on the date of her murder under false pretenses, posing as a customer or "john." These text messages established that [Appellant] was having text message contact with Ms. Recasens while he was travelling to Carrick. These text messages misled Ms. Recasens into believing that [Appellant] was a customer coming to see her and spanned the time between 1:16 a.m. and 2:02 a.m.

The knife used in the stabbing was recovered not far from the stabbing scene by local residents. DNA evidence linked blood on the knife to Ms. Recasens and it also linked the knife to [Appellant].

Trial Court Opinion, 1/22/18, at 1-3.

Charged with criminal homicide generally, the trial court convicted Appellant of third-degree murder. He was sentenced to twenty to forty years imprisonment on August 10, 2017. Following the denial of a timely post-sentence motion, Appellant filed a timely notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents two questions for this Court's review:

A.    Under Pennsylvania law, does the Commonwealth survive a challenge to the sufficiency of the evidence for third degree murder when the evidence adduced at trial fails to prove malice but establishes evidence of heat of passion killing?

B.    Under Pennsylvania law, did the trial court abuse its discretion by sentencing the Appellant based on evidence and information already factored into the sentencing guidelines?

Appellant's brief at 4 (footnote and unnecessary capitalization omitted).

The following principles apply to Appellant's challenge to the sufficiency of the evidence. Evidentiary sufficiency is a question of law and "our standard of review is de novo and our scope of review is plenary." Commonwealth v. Williams, 176 A.3d 298, 305 (Pa.Super. 2017).

In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving

every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

Id. at 305-06.

The evidentiary requirements to support a verdict of third-degree murder are well-established, and have been summarized by this Court as follows.

The Pennsylvania Criminal Code defines third degree murder as any killing with malice that is not first or second degree murder. Decisional precedent further establishes that third degree murder requires no specific intent to kill. Rather, the mens rea for third degree murder is malice, the definition of which is well settled:

Malice consists of a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured. Malice may be found where the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause serious bodily injury.

Commonwealth v. DiStefano, 782 A.2d 574, 582 (Pa.Super. 2001) (cleaned up).

Appellant contends that the Commonwealth's evidence failed to establish that Appellant acted with malice when he stabbed Ms. Recasens. Appellant's brief at 9-11. Instead, Appellant argues that, even viewed in the light most favorable to the Commonwealth, the evidence reflected that Appellant acted under the heat of passion. Id. at 9. Therefore, Appellant submits that the Commonwealth proved, at most, that he was guilty of

voluntary manslaughter under 18 Pa.C.S. § 2503,[1] not third-degree murder. *Id.* Specifically, Appellant makes the following observations concerning the trial testimony in his brief.

> Ms. Bujanowski testified that the Appellant was angry, was waving his arms and was arguing back and forth with [Ms. Recasens] for about ten minutes when the shiny object appeared in his hands suddenly and he stabbed [Ms. Recasens]. This concise factual summary is the text book definition of heat of passion as set forth in 18 Pa.C.S. § 2503. The evidence was clear that the Appellant travelled to Pittsburgh to confront the victim, not with the specific, reckless or malicious intent to kill and the killing only occurred following a brief argument, which is indicative of manslaughter, not murder.

Appellant's brief at 10.

The trial court made a different assessment of the evidence, opining as follows.

> The evidence in this case was sufficient to convict [Appellant] of third degree murder. All evidence pointed to the fact that the acts causing the murder were intentional. [Appellant] stabbed Ms. Recasens three separate times. He travelled from Monessen to Carrick with a knife. This fact alone lends itself to the conclusion that [Appellant] had an intent to use the knife when he encountered Ms. Recasens. The videotape and the testimony of Ms. Bujanowski make clear that [Appellant] volitionally plunged the knife into Ms. Recasens'[s] torso and neck. [Appellant]'s actions in stabbing Ms. Recasens in a vital part of her body are generally sufficient enough to establish malice. However, the fact that he stabbed her three times leaving her to die on a sidewalk amply demonstrated that [Appellant] acted with a "hardness of heart" or a "recklessness of the consequences" and that he had "a mind with no regard for social duty." These actions

_____

[1] "A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by: (1) the individual killed[.]" 18 Pa.C.S. § 2503(a).

of [Appellant] were also sufficient to show that [Appellant] consciously disregarded an unjustified and extremely high risk that his actions would result in serious bodily injury and death. Notably, [Appellant] also threatened Ms. Bujanowski not to disclose what he had done. Accordingly, the evidence presented in this case was sufficient to prove third degree murder.

Trial Court Opinion, 1/22/18, at 6-7.

We agree with the trial court's assessment. The fact that Appellant was angry when he stabbed Ms. Recasens did not foreclose the possibility that he acted with malice. Indeed, the events leading up to the crime tend to negate Appellant's claim that he acted under the heat of passion required to support voluntary manslaughter, i.e., that he, reasonably "confronted with this series of events, became impassioned to the extent that his mind was incapable of cool reflection." Commonwealth v. Cash, 137 A.3d 1262, 1271-72 (Pa. 2016) (citation and internal quotation marks omitted). Appellant's texting ruse to lure Ms. Recasens to meet him and his decision to take a deadly weapon to the meeting suggest cool calculation, not wild passion. See id. at 1272 (holding evidence did not warrant a voluntary manslaughter jury charge where it showed that the defendant, who claimed that he acted out of passion and fear from having been provoked by the victim, acted with malice when he approached the victim at a carwash and shot him in the head).

Moreover, Appellant's contention that he merely intended to confront Ms. Recasens, not to kill her, is not the only logical inference to be drawn from the evidence. As the trial court noted, Appellant's choice to take a deadly weapon with him supports the conclusion that Appellant at least contemplated

using it during his planned confrontation, and his decision to use it three separate times supports a finding of malice. See Commonwealth v. Smith, 408 A.2d 1155, 1157 (Pa.Super. 1979) (affirming third-degree murder conviction where malice was shown by the defendant's pulling a knife from his pocket and stabbing the victim above the stomach while urging the victim to leave). Accordingly, we hold that the Commonwealth's evidence was sufficient to sustain Appellant's conviction for murder of the third degree.

Appellant's remaining issue challenges the discretionary aspects of his sentence. The following principles apply to our consideration of his claim.

> An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors:
>
> > (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

Commonwealth v. Samuel, 102 A.3d 1001, 1006-07 (Pa.Super. 2014) (citations omitted).

Appellant timely filed a post-sentence motion and notice of appeal, and his brief contains a statement of reasons relied upon for his challenge to the discretionary aspects of his sentence as required by Pa.R.A.P. 2119(f). Thus, we consider whether Appellant has raised a substantial question.

In his Rule 2119(f) statement, Appellant contends that the following present substantial questions that his sentence is not appropriate.

1. The imposition of the sentence for the maximum penalty of third degree murder when the Appellant presented to the court with a minimal criminal history;

2. The trial court . . . failed to consider the specific facts of this case:

   a. strong inference of evidence for voluntary manslaughter;

   b. the lack of evidence proving malice;

   c. the reference to past conduct in sentencing for which the commission considered in the Appellant's sentencing computation.

Appellant's brief at 12 (unnecessary capitalization omitted).

Given that we have determined above that the Commonwealth's evidence proved that Appellant acted with malice, not under the heat of passion warranting a finding of voluntary manslaughter, issues (2)(a) and (2)(b) do not warrant our undertaking substantive review of Appellant's sentence. However, Appellant's claims that the sentencing court failed to consider his individual circumstances and based his sentence upon a double-counting of his past conduct do present substantial questions for our review. See Commonwealth v. Luketic, 162 A.3d 1149, 1162 (Pa.Super. 2017) (holding a substantial question is raised by the claim that the sentencing court failed to impose an individualized sentence taking into account the character and background of the defendant); Commonwealth v. Goggins, 748 A.2d

721, 732 (Pa.Super. 2000) ("[W]hen fashioning a sentence, a sentencing court may not 'double count' factors already taken into account in the sentencing guidelines."). Accordingly, we consider whether those claims are meritorious, guided by the following principles.

"When reviewing sentencing matters, this Court must accord the sentencing court great weight as it is in best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime." Commonwealth v. Ventura, 975 A.2d 1128, 1134 (Pa.Super. 2009). "We cannot re-weigh the sentencing factors and impose our judgment in the place of the sentencing court." Commonwealth v. Macias, 968 A.2d 773, 778 (Pa.Super. 2009). Rather, we review the trial court's determination for an abuse of discretion.

> In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

Antidormi, supra at 760.

> When imposing a sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation. Where the sentencing court had the benefit of a presentence investigation report . . . we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.

Commonwealth v. Moury, 992 A.2d 162, 171 (Pa.Super. 2010) (internal citations and quotation marks omitted).

"'It is impermissible for a court to consider factors already included within the sentencing guidelines as the sole reason for increasing or decreasing a sentence to the aggravated or mitigated range. Trial courts are permitted to use prior conviction history and other factors already included in the guidelines if, they are used to supplement other extraneous sentencing information.'" Commonwealth v. Shugars, 895 A.2d 1270, 1275 (Pa.Super. 2006) (quoting Commonwealth v. Simpson, 829 A.2d 334, 339 (Pa.Super. 2003)) (emphases omitted).

Appellant, citing a small portion of the sentencing transcript, argues that the trial court "neglected to consider [his] age [and] rehabilitative potential and [to] evaluate the information regarding the circumstances of the offense[.]" Appellant's brief at 14 (internal quotation marks omitted). Rather, Appellant suggests, the trial court impermissibly based his sentence upon "factors already included in [his] prior record score[.]" Id. at 13.

Our review of the certified record belies Appellant's claim. The trial court offered the following detailed explanation of its sentencing decision at Appellant's sentencing hearing.

> Rehabilitation of [Appellant] is one of the five considerations that I have . . . . It is one, particularly the most important one for the benefit of the zero prior record. Protection of the public safety, protection of the community is another, deterrence of the defendant and deterrence of others, victims' considerations, which the court uses to determine retribution. . . .

[Appellant] planned a confrontation with the victim in this case. He was not found guilty of premeditated murder or felony murder, but he planned a confrontation. He enlisted someone else to help him get there. He threatened that someone else to not talk after he did what he did, and this isn't the first time. You agreed to the presentence report. The presentence report indicates that this isn't the first time [Appellant] took physical action against someone who was trying to get away from him who was a partner as [the Commonwealth] points out. In 2014 [Appellant] was charged with simple assault, harassment and terroristic threats. He pled guilty, placed on probation. The description of that event is that he punched his ex-girlfriend in the face while she was giving him a ride to his apartment, ordered her into his residence to discuss their recent breakup, and once inside he eventually punched her again causing her to fall into the corner of a china closet. She was cut and he drove her to the hospital telling her, "If you snitch, I will kill you." She got 13 stitches to her forehead and she had a swollen jaw.

It seems that [Appellant] settles his relationships with violence, and in this case he settled it with the ultimate act of violence by killing somebody. He's a big man, broad shoulders, a strong man. His taking physical action against somebody has greater risk than someone smaller than he, but his size alone wasn't used in this case. He took a weapon with him. He didn't need a weapon unless what he wanted to do wasn't something good, but he didn't need a weapon. He took a weapon and he used it.

I think he represents the ultimate threat to the public safety. [Appellant] is therefore sentenced to a period of incarceration of not less than 240 nor more than 480 months. That's the maximum sentence I can give in this case. . . . [I]n cases in which I have discretion, I generally do not give the maximum sentence because I have hope for the defendant. I have hope that he can spend some time in a cage, take advantage of programs and the loss of freedom and the programs available that do rehabilitate him, and I have great hope generally for people your age and younger. But your actions in this case were brutal, they were thought out, at least with regard to the confrontation. Again, I emphasize, I'm not saying this was a premeditated murder, but with the part of the confrontation, that's why you went there, that's why you got the ride to go there, that's why

you made the threats afterwards. And this isn't the first time that you acted in such a manner with regard to somebody who was close to you.

[Appellant's counsel], sometimes you have to balance the need and the desire for rehabilitation of the defendant over those other interests, and in this case the interests of safety of the public, deterrence of your client, satisfying the victim, the family of the victim in this case since the victim herself didn't survive, and in some smaller way in this case making a statement that we're not going to accept this. This kind of treatment of domestic violence has to stop. Those four interests are served by this sentence and that your client having done this before has reduced the import and impact of his need for rehabilitation as a counterbalance.

I'm not saying you're hopeless, [Appellant]. I don't have the right to tell anybody that and I also don't want to tell anybody that. I want us to have hope for everybody, but you're a dangerous person and you need to be treated as a dangerous person.

N.T. Sentencing, 8/10/17, at 11-15 (unnecessary capitalization omitted).

From this it is clear that the trial court, contrary to Appellant's contentions, had the benefit of all of the necessary information, considered all of the required factors, and imposed the sentence it felt was necessary based upon Appellant's character and the particular facts of the case. Further, Appellant's prior record obviously was not the sole reason for the decision to impose the maximum sentence. Rather, Appellant's escalating violence, the impact on the victim, and the threat Appellant poses to the community all informed the court's decision. Accordingly, Appellant has failed to demonstrate that the trial court's sentence is the result of an abuse of discretion. See Commonwealth v. Rush, 162 A.3d 530, 546 (Pa.Super.

2017) ("That the trial court mentioned Rush's prior criminal history in fashioning his sentence does not demonstrate impermissible double-counting of sentencing factors. . . . [T]he trial court considered the [required] factors, including the impact on the life of the victims, the threat Rush posed to the community, and the facts and circumstances of the crimes. The trial court also considered the pre-sentence report, the fact that Rush was on absconder status, and his lack of successful rehabilitation in the past.") (emphasis and internal quotation marks omitted). No relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/27/2018