J-S76013-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA,

Appellee

v.

ERICA HARRIS,

Appellant

IN THE SUPERIOR COURT
OF
PENNSYLVANIA

No. 383 WDA 2018

Appeal from the Judgment of Sentence Entered August 2, 2017
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0005275-2016

BEFORE: BENDER, P.J.E., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED JUNE 24, 2019**

Appellant, Erica Harris, appeals from the judgment of sentence of 20 to 45 years' incarceration, imposed after she pled guilty to third-degree murder, conspiracy to commit murder, and kidnapping. On appeal, Appellant challenges the discretionary aspects of her sentence, and argues that her guilty plea was involuntary. After careful review, we affirm.

The facts of Appellant's case were summarized by the trial court, as follows:

> On March 24, 2016, [Appellant] drove a vehicle registered to her to a residence on Boggs Avenue in the Mt. Washington section of the City of Pittsburgh where the victim, Saevon Scott Ponder, was located. [Appellant] had originally attempted to purchase marijuana from the victim. When the victim didn't meet [Appellant's] demand, she contacted her boyfriend[, co-defendant Mitchell Coles,] and one of his friends[, co-defendant Johnnie Raines,] to help her obtain the marijuana. The three of them returned to the Boggs Avenue residence. A witness at that

residence reported that the victim had been with the witness at the Boggs Avenue residence. There was a knock on the door and the victim went outside with the person or persons who knocked on the door. The victim came back inside and grabbed some Xanax bars (illegal narcotics). The victim went back outside and left with [Appellant] and the two other males. A short time later, the victim called the witness and asked the witness to come outside. The witness came outside and observed the victim fleeing from inside the vehicle and running away from the area. Shortly thereafter, [Coles and Raines] were seen leading the victim to an area in [the] Beltzhoover section of the City of Pittsburgh adjacent to Mt. Washington. Gunshots were heard and the victim was found lying dead on the street. Video surveillance confirmed the circumstances of the incident including the fact that [Appellant] had been driving the vehicle that transported [Coles, Raines,] and the victim to the scene of the homicide. One of the shooters, when questioned, confirmed that [Appellant] had driven them to the Boggs Avenue residence and to the scene of the shooting.

Trial Court Opinion (TCO), 7/11/18, at 2-3.

On May 8, 2017, Appellant entered an open guilty plea to the above-stated charges. On August 2, 2017, the court sentenced her to 15 to 30 years' imprisonment for her third-degree murder conviction, a consecutive term of 5 to 15 years' incarceration for her kidnapping offense, and no further penalty for her conspiracy charge. Thus, Appellant's aggregate sentence is 20 to 45 years' incarceration. With the trial court's permission, Appellant filed *nunc pro tunc* post-sentence motions to withdraw her guilty plea and for reconsideration of her sentence. The court denied those motions on February 13, 2018. Appellant then filed a timely notice of appeal, and she also timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement. The trial court thereafter filed a Rule 1925(a) opinion.

During the pendency of this appeal, Appellant filed a *pro se* "Application for Relief," indicating that she desired to terminate the representation of her trial counsel, Scott Alan Westcott, Esq., and proceed *pro se* on appeal.[1]  On January 23, 2019, this Court issued a *per curiam* order forwarding Appellant's *pro se* application to Attorney Westcott in accordance with **Commonwealth v. Jette**, 23 A.3d 1032, 1044 (Pa. 2011) ("[T]he proper response to any *pro se* pleading is to refer the pleading to counsel and to take no further action on the *pro se* pleading unless counsel forwards a motion.").

On January 28, 2019, this Court received a letter from the trial court indicating that Attorney Westcott's license to practice law had been suspended on or after January 23, 2019.  Therefore, Attorney Westcott could not have acted on Appellant's *pro se* application to terminate his representation that was forwarded to him by this Court, and Appellant was effectively unrepresented on appeal.  Consequently, we remanded Appellant's case for the trial court to conduct a hearing to determine if new counsel should be appointed or, if Appellant wished to proceed *pro se*, that her decision to do so was knowing, intelligent, and voluntary in accordance with **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).  We directed the court to conduct that within 30 days of the February 28, 2019 filing date of our decision.  We also provided that Appellant would have 30 days after the date of the court's

_____

[1] When Appellant's *pro se* application was filed on January 17, 2019, Attorney Westcott had already filed a brief on her behalf on October 9, 2018. Additionally, the Commonwealth had filed its brief on November 6, 2018, and the time for Appellant's filing a reply brief had passed.

- 3 -

resolution of the representation issue to file with this Court a reply brief to supplement the brief supplied by Attorney Westcott.

The trial court conducted a hearing on March 14, 2019. On May 8, 2019, it issued an order stating that Megan Loftis, Esq., is counsel of record for Appellant. However, Attorney Loftis did not file a reply brief by the due date of June 8, 2019. Accordingly, we will address only the following two issues set forth in Appellant's original brief:

> I. Did the [t]rial [c]ourt err in abusing its discretion in sentencing Appellant to an excessive and identical sentence as the co-[d]efendants, and failing to thoroughly consider factors established in the [S]entencing [C]ode, 4[2] Pa.C.S. [§] 9701, *et seq.*?
>
> II. Did the [t]rial [c]ourt err in refusing to grant [Appellant's] Motion to Withdraw Guilty Plea based upon ineffective assistance of counsel and [Appellant's] failing to enter into a voluntary and knowing[] plea, considering, but not limited to[,] the following factors:
>
>> a. Trial [c]ounsel never reviewed with [Appellant] all of the evidence obtained through discovery;
>>
>> b. Trial [c]ounsel did not review the Affidavit of Probable Cause to the Criminal Complaint as evidence in the sentencing record; and
>>
>> c. Trial [c]ounsel advised [Appellant] to answer "yes" in order to continue the plea hearing.

Appellant's Brief at 6.

Appellant first challenges the discretionary aspects of her sentence.

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. ***Commonwealth v. Sierra***, 752 A.2d 910, 912 (Pa. Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

- 4 -

> We conduct a four-part analysis to determine: (1) whether [the] appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether [the] appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

> **Commonwealth v. Evans**, 901 A.2d 528, 533 (Pa. Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006). Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed. **Commonwealth v. Mann**, 820 A.2d 788, 794 (Pa. Super. 2003), *appeal denied*, 574 Pa. 759, 831 A.2d 599 (2003).

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. **Commonwealth v. Paul**, 925 A.2d 825, 828 (Pa. Super. 2007). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Sierra, supra** at 912–13.

**Commonwealth v. Griffin**, 65 A.3d 932, 935 (Pa. Super. 2013) (quoting

**Commonwealth v. Moury**, 992 A.2d 162, 170 (Pa. Super. 2010)).

Appellant preserved her instant sentencing claim in a post-sentence motion, she filed a timely notice of appeal, and she included a Rule 2119(f) statement in her appellate brief. However, the entirety of that statement reads: "[Appellant] raises the discretionary aspects of the [l]ower [c]ourt's sentence in that the [l]ower [c]ourt sentenced Appellant to an excessive sentence without employing the fundamental norms that [Appellant's] sentence be individualized." Appellant's Brief at 16. The Commonwealth

submits that Appellant's cursory Rule 2119(f) statement fails to demonstrate that she is raising a substantial question for our review. *See* Commonwealth's Brief at 12. We agree. Appellant offers no elaboration on why her sentence is excessive, nor any support for her allegation that the court failed to individualize her sentence. Accordingly, her cursory Rule 2119(f) statement does not convince us that her claim involves a substantial question for our review.

Nevertheless, even had Appellant satisfied the prerequisites for review of her sentencing claim, we would deem it meritless. Essentially, Appellant contends that the court failed to take into account her character and individual circumstances in fashioning her sentence and, instead, determined, *prior to* the sentencing hearing, that it would impose upon Appellant the exact same sentence her co-defendants received.[2] *See* Appellant's Brief at 23. According to Appellant, her codefendants "had extensive juvenile records" that resulted in prior record scores exceeding her own score of zero, and guideline ranges that were higher than those applicable to Appellant. *Id.* at 20, 21. Thus, Appellant insists that the court's decision to impose upon her the same sentence it fashioned for her co-defendants demonstrates that the court "basically used the co-[d]efendant[s'] prior record score[s] - and sentencing guidelines - as the yardstick in determining Appellant's sentence." *Id.* at 22. As proof of this fact, Appellant stresses that, at her sentencing hearing, the

---

[2] Appellant's co-defendants, Coles and Raines, received aggregate terms of incarceration of 20 to 50 and 20 to 45 years, respectively.

court stated: "I think that [Appellant] should serve the same penalty as her co[-]defendants…. I do. I don't see any reason to deviate from it because she facilitated it, all of this. All of it." N.T. Sentencing, 8/2/17, at 34.

Appellant also insists that the court's sentencing decision in this case mirrors that struck down by this Court in *Commonwealth v. Luketic*, 162 A.3d 1149 (Pa. Super. 2017). There, Luketic pled guilty to possessing a controlled substance that had been sold to him by Lanel Buckner, who also pled guilty to certain offenses. *Id.* at 1152. At Buckner's sentencing hearing, which occurred before Luketic's, the trial court referred to Luketic as a "dope fiend[]" and stated, "[Luketic] is going to jail, too. [Luketic] is not walking out of here either." *Id.* On appeal, Luketic contended "that the court erred in not imposing an individualized sentence following his open guilty plea, and that it instead decided [Luketic] would receive a sentence of incarceration before the sentencing proceeding began." *Id.* at 1159.

This Court agreed, holding that "the trial court manifestly abused its discretion by pre-determining [Luketic's] sentence without considering individualized factors regarding [Luketic]." *Id.* at 1163. In support of our decision, we observed that, "the trial judge announced his intention to incarcerate [Luketic] prior to the commencement of [his] sentencing proceeding and before receiving any individualized information about [Luketic]." *Id.* The *Luketic* panel also took issue with the court's statement that Luketic, as a drug user, was the 'opposite side of the same coin' of his co-defendant, the drug dealer. *Id.* at 1164-65. We found that this rationale

was akin to using "the nature of the criminal act ... as the sole basis for the determination of the length of sentence[,]" which constitutes an abuse of discretion. *Id.* at 1165 (citation omitted). Finally, the *Luketic* panel concluded that the trial court had paid mere lip service to other individualized sentencing factors in fashioning Luketic's term of imprisonment. *Id.* For instance, the court did not order any drug treatment, despite Luketic's addiction issues. *Id.* The court also did not order a pre-sentence investigation report, thus precluding a presumption that the court "was aware of relevant information regarding [Appellant]'s character and weighed those considerations along with the mitigating statutory factors." *Id.* Accordingly, "[f]or all of these reasons," we vacated Luketic's sentence. *Id.*

It is clear that the present case is distinguishable from *Luketic*. First, Appellant does not identify any pre-sentencing statements by the court that are comparable to that made by the trial court in *Luketic*. While the court did state that Appellant deserved the same sentence as her co-defendants, that remark was made *after* the court considered the evidence presented at the sentencing hearing. That evidence included a pre-sentence report, to which Appellant made no additions or corrections, *see* N.T. Sentencing, 8/2/17, at 3; victim impact statements from the victim's mother, sister, and brother, *id.* at 4-10; and Appellant's statement of allocution, in which she expressed her remorse for her actions and stated that she planned to focus on rehabilitation while incarcerated, *id.* at 11-13. The court also considered arguments by the Commonwealth and defense counsel, including, *inter alia*,

the Commonwealth's position that Appellant's sentence should be equal to those imposed upon her co-defendants because she instigated and facilitated the murder, *id.* at 19-20, and defense counsel's argument that Appellant should receive a more lenient sentence because she had "accepted responsibility" by pleading guilty, she spared the victim's family the stress of "sitting through a trial," and she had recently given birth to a child, *id.* at 26-27.

After listening to the evidence, and the parties' arguments, the court explained the sentence it was imposing upon Appellant, as follows:

> [Appellant], the child involved in this case, your child, [defense counsel] references, perhaps is a symbol of sort of all the young lives that are affected by your decisions.

> [Defense counsel] is in a way pleading with the [c]ourt to allow your child to have a mother before your child is off to college. But other people's children, the victim and your two co-[d]efendants, have already been affected.

> They are all young people. You are a young person. Older people like myself, when you see these cases where young people like you with a lot of positive possibilities in her life, … make decisions that take all those possibilities away. In some cases, judges have no discretion to send a person your age or younger to prison forever, life without parole.

> \*\*\*

> You've got to answer to the community and to some particular members of the community for your conduct despite the fact that it is going to take you out of the life of your child for a long, long time. There is no way around it.

> [Defense counsel] is right. There are no winners, everybody loses, and your child that didn't exist when this happened … lose[s] because of the decisions that you made, and I say

decisions plural, not singular. You made several decisions in this case that cost a young man, a member of our community, his life.

Sometimes I wonder whether people in your position think that you are part of the community or you are some little colony over there, some island over there. You are not part of the community.

We all lose when we have to send somebody like you to prison just like we lose the victim in this case. He isn't here anymore to be a member of our community, but you have to answer for it.

You can't keep saying, she didn't mean it, she didn't know. Oh, well, she has a child. You can't keep making -- I won't say excuses, but finding reasons not to hold you accountable.

Sometimes when we have the victim impact statements the members of the decedent's family are speaking with venom. They are entitled to.

Today they did not. Today we had very meaningful statements but calmly presented. And I applaud the family for that because they are entitled to spew venom if they want over what happen[ed] to their loved one.

Then they themselves sometimes are caught with their own -- challenging their own values. [The victim's] [m]om said that she was raised as a Christian, as I was. And she referred to the Old Testament, an eye for an eye, but the New Testament says, turn the other cheek, and the Judge has to balance both.

It is not easy. I sign a piece of paper and off you go for however many years that I say and however that I follow the law that you are going to serve those years and the law allows me to send you away for -- I can literally send you away for longer than [your co-defendants].

The law permits that. I won't. Because in the end you were not the one who pulled the trigger.

You facilitated everything that happened in this case and you demonstrated even after the fact that you were going to continue to try to protect [your co-defendant, Coles,] who

committed this terrible act[,] even by misrepresenting your situation to the Commonwealth when they gave you a chance.[3]

I have to tell you that that somewhat cuts back on my willingness to accept your total remorse today because I wonder are you just saying what you think needs to be said? Again, it is hard to say.

I think that [Appellant] should serve the same penalty as her co-[d]efendants…. I do. I don't see any reason to deviate from it because she facilitated it, all of this. All of it.

This would be a different case if she did one thing and it got out of hand and the other guys acted in a way that went beyond what you might expect happened, but that's not what happened in this case.

She facilitated it when the victim jumped out of the car. She was there to wait to get him back in, to take him to the spot where he would be executed -- sorry, mom, but that's what happened here[,] he was executed, and you sat there and waited for them to execute him and then you gave them the ride back, and even after the fact you lied to the Commonwealth as to your intent to cooperate.

---

[3] The court is referring to the fact that, as explained by the Commonwealth at Appellant's guilty plea proceeding,

there was an agreement made between the Commonwealth and [Appellant] immediately prior to the preliminary hearing in this case[,] which is why [Appellant] was [initially] only charged with kidnapping, conspiracy and possession of marijuana…. Part of that agreement was she have no contact whatsoever with [her co-defendant,] Mr. Coles. She flagrantly violated that agreement, repeatedly spoke to him on the phone, spoke to him about this case, these charges, [and] the circumstances.

N.T. Guilty Plea, 5/8/17, at 10. The trial court found that Appellant's violating her pretrial agreement with the Commonwealth cast doubt on the sincerity of her expressions of remorse for her part in the shooting. **See** N.T. Sentencing at 25-26.

> I see that as demonstrating that you pose a substantial risk to the community and you need to face the same sentence as your co-[d]efendants do. … It is the [c]ourt's intention to sentence [Appellant] to 20 to 45 years.

*Id.* at 31-35. The court structured Appellant's sentence such that she received a standard range term of 15 to 30 years' for third-degree murder, an above-aggravated-range sentence of 5 to 10 years' for kidnapping, and no further penalty for conspiracy to commit murder.[4]

The entirety of the record before us demonstrates that, unlike in *Luketic*, the court did not make a predetermined decision in sentencing Appellant, nor did it rely solely on the nature of her criminal act in fashioning her sentence. Rather, the court reached its sentencing decision after carefully considering the pre-sentence report, the evidence and arguments presented at the sentencing hearing, the circumstances of the case, and the individual characteristics of Appellant, including her youth, familial obligations, expressions of remorse, and the danger she poses to the community. Additionally, the court balanced the fact that Appellant was not the person who shot the victim with the fact that she started, and facilitated, the chain of events leading to the victim's death. Namely, she drove her co-defendants to the victim's home, drove all three men to the location of the murder, and she

---

[4] As the Commonwealth points out, Appellant does not raise any specific challenge to her kidnapping sentence on the basis that it exceeds the guideline ranges. *See* Commonwealth's Brief at 10 n.12.

did not at any point attempt to stop the killing from happening.[5]  Given all of these factors, the court determined that Appellant deserved a sentence comparable to that imposed upon her co-defendants.  We would discern no abuse of discretion in that decision, had Appellant presented a substantial question for our review in her Rule 2119(f) statement.

In Appellant's second issue, she contends that her plea counsel acted ineffectively in several regards, which led to her guilty plea not being knowing, intelligent, and voluntary.  Appellant acknowledges that "claims of ineffective assistance should ordinarily be reserved for collateral review."  Appellant's Brief at 24 (relying on **Commonwealth v. Grant**, 813 A.2d 726 (Pa. 2002)).  She avers, however, that the true issue before us is not an ineffectiveness claim, but an argument that "the lower court failed to make an adequate inquiry into whether [she] made a knowing, intelligent and voluntary plea."  **Id.**  Specifically, Appellant attacks the court's failure to inquire further when Appellant changed an answer during the plea colloquy, as follows:

THE COURT: [Appellant], did you read the Affidavit in your case?

_____

[5] Appellant claims, in a footnote, that the trial court "relied upon facts that were purported by the Commonwealth but not substantiated before the court."  Appellant's Brief at 22 n.3.  However, she provides no citation to the record to support her claim that, "[a]t sentencing, trial counsel argued that the facts being offered by the Commonwealth were not completely factual relating to [her] initial involvement and relating to whether [she] could have abated the 'kidnapping' and events leading to the victim's death."  **Id.**  Moreover, aside from the two-sentence footnote, Appellant does not develop any meaningful argument regarding the court's allegedly considering facts not supported by the record.  Thus, we do not consider that claim herein.

[Appellant]: No, sir.

[Plea Counsel]: Can I have a moment, Your Honor?

(Counsel and [Appellant] confer.)

[Appellant]: Yes, sir.

N.T. Guilty Plea at 8. According to Appellant,

> she did not review the Affidavit of Probable Cause and much of the discovery provided by the Commonwealth. Appellant contends that her [plea] counsel, in the off the record discussion[,] advised her to answer "yes" so the lower court would accept her plea. Appellant was led to believe by counsel that she was being sentenced to a period of incarceration of seven (7) years. It is Appellant's position that the lower court should have made a further inquiry relating to why Appellant answered that she did not read the Affidavit of Probable Cause. Not having reviewed the discovery associated with this case, Appellant did not enter into a knowing, intelligent and voluntary plea. [The] [l]ower court erred in not allowing [her] to withdraw her guilty plea.

Appellant's Brief at 28.

Appellant's assertion that her plea counsel gave her misinformation, and directed her to provide untrue answers during the plea colloquy, are clearly ineffectiveness claims that must be raised on collateral review. **See Grant, supra**. Without testimony regarding what counsel said to Appellant during their off-the-record discussion, we cannot conclude that the court's failure to inquire into Appellant's change of answer to the simple question of whether she read the affidavit of probable cause constitutes "manifest injustice" warranting the post-sentence withdrawal of her plea. **See Commonwealth v. Muhammad**, 794 A.2d 378, 383 (Pa. Super. 2002) ("The standard for withdrawal of a guilty plea after imposition of sentence is much higher [than

- 14 -

a pre-sentence withdrawal]; a showing of prejudice on the order of manifest injustice is required before withdrawal is properly justified.") (citation and internal quotation marks omitted). Accordingly, we deny Appellant relief on her second issue, without prejudice to her right to seek collateral review of this claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/24/2019