J-A29021-20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JARRETT ALVIN KINLEY | : | |
| | : | |
| Appellant | : | No. 1753 MDA 2019 |

Appeal from the Judgment of Sentence Entered September 18, 2019,
in the Court of Common Pleas of Northumberland County,
Criminal Division at No(s):  CP-49-CR-0000801-2016

BEFORE:  DUBOW, KUNSELMAN, and COLINS,* JJ.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED MARCH 16, 2021**

Jarrett Alvin Kinley appeals from the judgment of sentence imposed after a jury convicted him of multiple sex offenses.  We affirm Kinley's convictions, but vacate his judgment of sentence and remand for resentencing.

The pertinent facts and procedural history, as gleaned from our review of the certified record, are as follows:  By criminal information filed July 12, 2016, the Commonwealth charged Kinley with various sex offenses he committed against his daughter ("the complainant") over a nine-year period.[1]

---

[1] Specifically, Kinley was charged with:  Count 1, rape-forcible compulsion; Count 2-rape of a child; Count 3, involuntary deviate sexual intercourse ("IDSI")-forcible compulsion; Count 4, IDSI-person less than 16 and person is four or more years older; Count 5, incest of a minor-person less than 13;

*Retired Senior Judge assigned to the Superior Court.

Prior to trial, the Commonwealth filed a motion *in limine* to prohibit defense counsel from admitting at trial handwritten pages from journals the complainant kept during the time in question. The Commonwealth claimed the entries either violated the Rape Shield Law, 18 Pa.C.S.A. section 3104, or were otherwise not relevant pursuant to Pa.R.E. 401. *See* Motion, 1/24/17, at 2. The trial court held an *in camera* review of the journal entries and heard argument from the parties on February 6, 2017.[2] By order entered the next day, the trial court granted the Commonwealth's motion in part. The court found "that the journals were not relevant, however, they may be referred to as being kept by the [complainant] and the fact that they contain nothing about the alleged criminal incidents involving [Kinley]." Order, 2/7/17, at 1.

Several weeks later, the Commonwealth filed another motion *in limine*, seeking permission to introduce at trial a video and statements made by Kinley during a polygraph examination that Kinley took at the request of a bail bondsman. Although the trial court initially denied this request, the Commonwealth filed a motion to reconsider. On January 4, 2018, the trial court held an evidentiary hearing on the motion at which the Commonwealth

_____

and Count 6, indecent assault-person less than 13. 18 Pa.C.S.A. §§ 3121(a)(1), 3121(c), 3123(a)(1), 3123(a)(7), 4302(b)(1), and 3126(a)(7), respectively.

[2] Because the journals were never admitted at trial, they do not appear in the certified record. Nevertheless, the trial court found that the disputed entries concerned a fantasy relationship the complainant, who was then 15, was having with a 20-year old man.

presented the testimony of Ken Davis, a retired state trooper who conducted the polygraph examination. At the conclusion of the hearing, the trial court granted the Commonwealth's motion with the limitation that "the term polygraph not be used at any time during the pendency of the trial." N.T., 1/4/18, at 22.

Kinley's jury trial commenced on May 8, 2018, but shortly ended in a mistrial. In her opening statement, defense counsel indicated that the complainant only made her allegations after Kinley tried to stop her from dating a twenty-year-old man. N.T., 5/8/18, at 16-17. The Commonwealth objected that the statement violated the Rape Shield Law, and the trial court agreed.

Kinley's second jury trial began on February 5, 2019. As its first witness, the Commonwealth called the complainant, who was then nineteen and had a child of her own. When asked about Kinley, complainant testified that she "was raped for seven years of [her] life and molested for nine years." N.T., 2/5/19, at 21. The complainant then described in detail how Kinley's first actions started shortly after her younger brother was born, and progressed to oral, anal and vaginal intercourse up until she reached the age of sixteen.

On cross-examination, the complainant acknowledged that she told Dennis Kibler about the abuse. When asked about her relationship to Dennis, the complainant testified that they never dated, but she described him as "a friend of mine. Somebody I could talk to whenever I was scared or alone." *Id.* at 37. Upon further inquiry, the complainant agreed with defense counsel

that Kinley did not want her to have a relationship with Dennis. ***See id.*** at 54. She was not to see him, and to have no communication with him whatsoever. ***Id.***

Referring to her journal, the complainant acknowledged that she dedicated the book to Dennis. According to the complainant, she "never spoke to Dennis, so that was my only way of having any communication to what I perceived to possibly be the outside world one day. . . . I was told not to speak with him, and I know if I did I would be in some major trouble. I could not get in trouble for something that was just written down and never handed to him." ***Id.*** at 54-55.

After further cross-examination, the complainant admitted that she did see Dennis at church on occasion and spoke with him. ***Id.*** at 55. She denied, however, that she communicated with Dennis on Facebook by using her Nintendo device. The complainant acknowledged that Kinley broke the device so she could not use it anymore. ***Id.***

In addition to the complainant, the Commonwealth called four witnesses: a forensic interviewer employed by the Child Advocacy Center, who interviewed the complainant; an expert in the field of child abuse pediatrics, who testified regarding his physical examination of the complainant; Mr. Davis, as a fact witness; and a state trooper, who interviewed both the complainant and her mother shortly after the last incident.

In his defense, Kinley presented testimony from four witnesses: his brother-in-law; the complainant's cousin; his wife, who is also the complainant's mother; and a nurse practitioner, who testified regarding Kinley's history of erectile dysfunction and low testosterone levels. Additionally, Kinley testified on his own behalf to deny all of the allegations.

The jury convicted Kinley on all charges. On September 18, 2019, the trial court sentenced him to an aggregate sentence of 30 to 60 years of imprisonment, and a consecutive 3 year probationary term. Kinley filed a timely post-sentence motion, which the trial court denied.[3] This appeal followed. Both Kinley and the trial court have complied with Pa.R.A.P. 1925.

Kinley raises the following four issues on appeal:

I.      Were the circumstances surrounding [Kinley's] polygraph so tainted that to admit the inculpatory statements he made to the examiner denied him a fair trial, and to deny a new trial was error?

II.     Did the prosecutor's failure to correct the polygraph examiner's trial testimony—which asserted [Kinley] paid for his services—perpetuate a false narrative surrounding the circumstances of [Kinley's] inculpatory statements, such that he was denied due process, and it was error to deny a new trial related thereto?

III.    Did the trial court misapply the Rape Shield Law by prohibiting [Kinley] from eliciting evidence that [the complainant] was in a relationship with an older male

_____

[3] Previously, Kinley filed a post-conviction motion for extraordinary relief pursuant to Pa.R.Crim.P. 704(B), which the trial court denied. In his post-sentence motion, Kinley repeated the claims he raised in the earlier motion and requested reconsideration of his sentence.

that he disapproved of, thereby restricting or denying his Confrontation rights and undermining his defense narrative?

IV. Did the trial court err or otherwise abuse its discretion when imposing sentence where—

A. The consecutive three-year period of probation to follow the 10 to 20 year sentence at Count 1, Rape-Forcible compulsion, was an illegal sentence;

B. The 20-40 year sentence imposed at Count 2, rape of a child, was evidently informed by an unconstitutional mandatory minimum found at 42 Pa.C.S. § 9718(a)(3);

C. The sentences imposed at Counts 1, 3, and 4, were outside the aggravated ranges of the sentencing guidelines and the trial court did not adequately set forth its reasons on the record, therefore; [and]

D. The sentence overall was far from individualized in that what the trial court did articulate on the record focused exclusively on the nature of the crime and made no mention of [Kinley's] personal characteristics or attributes[.]

Kinley's Brief at 5-6.[4] We will address these issues in the order presented.

In his first issue, Kinley challenges the admission of statements he made during a polygraph examination. Our standard of review is well settled:

Questions regarding the admission of evidence are left to the sound discretion of the trial court, and we, as an appellate court, will not disturb the trial court's rulings regarding the admissibility of evidence absent an abuse of that discretion. An abuse of discretion is more than a mere error of judgment; rather, an abuse of discretion will be found when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the

---

[4] We have reordered Kinley's sentencing claims for ease of disposition.

result of partiality, prejudice, bias, or ill-will, as shown by the evidence of record.

***Commonwealth v. Pukowsky***, 147 A.3d 1229, 1233 (Pa. Super. 2016).

Summarizing this claim, Kinley asserts that "a new trial was due in the 'interests of justice'" because "the jury heard [his] inculpatory statements made under false pretenses, in the course of an involuntary polygraph, where his will was overborne[.]" Kinley's Brief at 32.

The trial court found no merit to this claim. The court explained:

> The [trial court] will, however, address the polygraph examiner's testimony and why it was allowed during [Kinley's] trial. A hearing was held on July 24, 2017, on a Motion filed by the Commonwealth to use the testimony of the polygraph examiner during [Kinley's] trial. Defense counsel opposed the testimony by the polygraph examiner on the grounds that the polygraph was a requirement of the bail bondsman. Furthermore, [Kinley] maintains that he was informed by the examiner that [he] was assured that any statements he made would not be divulged to anyone else.
>
> The Commonwealth wanted the testimony admitted due to certain admissions that [Kinley] made that were inculpatory and at odds with other claims [Kinley] had made. ***It is important to note that the polygraph was not administered at the request of the Commonwealth but at the request of the bail bondsman chosen by [Kinley].*** Ultimately, the [trial court] allowed the examiner to testify as long as no mention was made regarding a polygraph examination or that the interviewer was a polygraph examiner.
>
> The Polygraph examiner, Mr. Ken Davis, did in fact testify at trial. The examiner never referred to himself as a polygraph examiner nor was there any mention of a polygraph or results of a polygraph examination in front of the jury. His testimony was limited to the admissions [Kinley] made during the examination.

Trial Court Opinion 1/13/20, at 3 (unnumbered) (emphasis added).

Our review of Mr. Davis' trial testimony supports the trial court's conclusions. Although the trial court did not directly address Kinley's claim that the polygraph examination was tainted and his statements involuntary, we note that similar allegations were raised by prior counsel at the July 24, 2017 evidentiary hearing. Given the court's decision to grant the Commonwealth's motion, it is clear that the trial court found no basis to exclude Kinley's statements and rejected Kinley's claim that his statements were involuntary.[5] Although Kinley's believes that the entire interview was suspect, *see* Kinley's Brief at 40-44, the record shows that Mr. Davis was not acting as an agent for the Commonwealth. Moreover, Kinley voluntarily chose this bail bondsman and agreed to submit to the polygraph exam instead of seeking a different bondsman who may not have required it.

Additionally, on cross-examination by defense counsel, Mr. Davis acknowledged that he interviewed Kinley for almost three hours, and then talked with him for another hour afterwards. During that time, Mr. Davis told Kinley "that [he] didn't believe him, that he needed to tell [me] something happened[.]" N.T., 2/5/19, at 95. Defense counsel asked Mr. Davis whether he told Kinley, "Just tell me something happened and you can leave." *Id.* at 97-98. Mr. Davis replied, "He hired me. He could leave any time he wanted

---

[5] In addition, we note that, at the evidentiary hearing Mr. Davis denied contacting the Commonwealth or a state trooper in regard to the polygraph examination. *See* N.T., 1/4/18, at 13.

to." *Id.* at 98. Defense counsel then moved on to revisit the circumstances surrounding his post-interview discussions with Kinley, and Mr. Davis admitted that he suggested to Kinley that certain acts occurred, and Kinley responded, "Well, okay. Sure." *Id.* at 99. Thus, the jury heard the circumstances surrounding Kinley's statements and could weigh them accordingly. Kinley's first issue fails.

Kinley's second issue relates to Mr. Davis' cross-examination testimony that Kinley hired him. Kinley claims that he was denied due process by the prosecutor's failure to correct "a false narrative" that Kinley "hired" Mr. Davis.

The trial court found no merit to this claim. As it explained:

> There is nothing in the record which shows that anyone other than [Kinley] and/or his attorney paid for the examination. There is certainly no indication that the examination was at the behest of or paid for by the Commonwealth. If the defense believed there was a mistake in the examiner's testimony as to who paid for his services, [the trial court] believes it was incumbent upon the defense to correct the "false narrative."

Trial Court Opinion, 1/13/20, at 4 (unnumbered). We agree. Despite his claim to the contrary, Mr. Davis did not present "false" testimony as he or his father hired the bail bondsman who then hired Mr. Davis to conduct the polygraph examination.

Moreover, in arguing that the Commonwealth was obligated to correct this "false narrative"—or more precisely clarify Mr. Davis' answer—Kinley cites to case law and American Bar Association standards that involve situations where the Commonwealth permitted "false" testimony **introduced by the**

**prosecution** to go uncorrected. *See* Kinley's Brief at 58-59 (citing ***Napue v. Illinois***, 360 U.S 264, 269-70 (1959); ABA Standards of Criminal Justice Relating to Prosecution Function, Standard 3-6.6(c)).

Also, Kinley's concern that defense counsel's further questioning of Mr. Davis as to who hired him "would've only opened up a Pandora's box of other questions," does not establish a basis for relief. Kinley's Brief at 60. This is especially true, given Kinley's own direct testimony in which he claimed Mr. Davis pressured him into making the statements introduced by the Commonwealth. *See* N.T., 2/6/19, at 229-230; at 231 (testifying Mr. Davis "told me I had to tell him something before I got to leave"). Kinley put the circumstances of the interview at issue. The Commonwealth was then free to rebut Kinley's claim and clarify this testimony.

Finally, Kinley cites no case authority for his assertion that "so long as this was evidence that the Commonwealth wanted, it had the obligation to ensure that its evidence was accurate and comported with the truth." *Id.* Although the Commonwealth introduced Mr. Davis' testimony regarding inculpatory statements Kinley made to him, during presentation of that testimony the Commonwealth never introduced any evidence of Mr. Davis' employer. Rather, Mr. Davis gave that information during cross-examination by defense counsel. As such, defense counsel could have corrected the "false narrative," if necessary. Kinley's second issue fails.

In his third issue, Kinley asserts that, due to the trial court's misapplication of the Rape Shield Law, the jury was wrongfully deprived of

hearing his defense narrative that the complainant's charges against him were in retaliation for his prohibiting the complainant's relationship with an "older male." Kinley's Brief at 32.

Although Kinley discusses case law regarding the protections and scope of the Rape Shield Law, we need not decide whether the trial court misapplied the statute in this case. Despite the trial court's ruling on this issue, our review of the trial transcript reveals that defense counsel repeatedly presented evidence that this "prohibited relationship" caused the complainant to make her allegations.

As detailed above, defense counsel cross-examined the complainant regarding "Dennis." In addition, the complainant's mother testified that Kinley told her he smashed the complainant's Nintendo "because she was talking to some gentleman on the [device] that she was not allowed to be talking to." N.T., 2/5/19, at 180. According to the complainant's mother, "a couple minutes later" the complainant disclosed that Kinley had been having sex with her since a month after her brother was born. *Id.*

Although the trial court prohibited defense counsel from informing the jury that Dennis was an older man, it is clear that the relationship, and the complainant's alleged motive for making the allegations, were presented to the jury. Given these circumstances, Kinley does not explain why he should have been allowed to "delve" further into the relationship. *See* Kinley's Brief at 70. Moreover, the trial court concluded that there was no actual relationship with Dennis, but merely the complainant's fantasy about one.

Contrary to Kinley's claims, the record shows that he did provide evidence that the complainant's charges were merely an act of retaliation against him. While defense counsel did not emphasize in her closing argument the complainant's prohibited relationship with Dennis as a basis for the allegations,[6] the fact that current counsel would have presented Kinley's retaliation claim differently does not provide a basis for relief. Because he had an opportunity to explore the complainant's reasons for retaliation as part of the "defense narrative," Kinley's third issue fails.

In his fourth and final issue, Kinley presents four challenges to his aggregate sentence as both illegal and unreasonable. As noted above, Kinley received an aggregate sentence of 30 to 60 years of imprisonment, and a consecutive 3 year probationary term.

We first address Kinley's illegality claims. "When we address the legality of a sentence, our standard of review is plenary and is limited to determining whether the trial court erred as a matter of law." *Commonwealth v. Bowers*, 25 A.3d 349, 352 (Pa. Super. 2011) (citation omitted). "A challenge to the legality of a sentence may be raised as a matter of right, is not subject to waiver, and may be entertained as long as the reviewing court has jurisdiction." *Id.* "If no statutory authorization exits for a particular sentence,

---

[6] In her closing to the jury, defense counsel stressed the complainant's inability to remember dates and details of the incidents, and highlighted the inconsistencies in the complainant's statements to various people. *See* N.T., 2/6/19, at 231-245. Defense counsel also argued that the complainant lied about the allegations to her mother because she was mad at Kinley and was "plotting" to put him in jail. *See id.*

that sentence is illegal and subject to correction. An illegal sentence must be vacated." *Id.*

Kinley first claims that the trial court imposed an illegal sentence on Count 1, rape-forcible compulsion, because, in addition to the maximum sentence of 10 to 20 years of imprisonment, the court added a mandatory consecutive 3 year probationary tail. The court imposed this probation pursuant to 42 Pa.C.S.A. section 9718.5, which became effective April 23, 2018. According to Kinley, because the alleged conduct for which he was convicted occurred no later than 2016, the application of this section to him is an unlawful ex-post-facto law. We agree.

Section 9718.5 of the Judicial Code requires the sentencing court to impose a consecutive probationary term of three years, in addition to any lawful sentence imposed for the crime, upon persons convicted of certain sexual offenses.[7]

---

[7] Section 9718.5 reads as follows:

> **§ 9718.5. Mandatory period of probation for certain sexual offenders**
>
> **(a) Mandatory probation supervision after release from confinement.—**A person who is convicted in a court of this Commonwealth of an offense under section 9799.14(d) (relating to sexual offenses and tier system) shall be sentenced to a mandatory period of probation of three years consecutive to and in addition to any other lawful sentence issued by the court.

As our Supreme Court summarized:

> In order for a criminal or penal law to be deemed an *ex post facto* law, two critical elements must be met: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it.

***Commonwealth v. Rose***, 127 A.3d 794, 799 (Pa. 2015) (citation omitted).

Here, because the events involved ended in 2016, and the statute was not effective until 2018, its application to Kinley is retrospective. The consecutive three-year probationary sentence also disadvantaged him, in that

---

**(b) Imposition.**—The court may impose the term of probation required under subsection (a) in addition to the maximum sentence permitted for the offense permitted for the offense for which the defendant was convicted.

**(c) Authority of court in sentencing.**—There shall be no authority in a court to impose on an offender to which this section is applicable a lesser period of probation than provided for under subsection (a). Sentencing guidelines promulgated by the Pennsylvania Commission on Sentencing shall not supersede the mandatory period of probation provided under this section.

**(d) Direct Supervision.**—Nothing under this section shall limit the court's authority to direct supervision by the Pennsylvania Board of Probation and Parole by special order as provided under 61 Pa.C.S. § 6133(a) (relating to probation services).

42 P.A.C.S.A. § 9718.5

it constituted additional punishment beyond the statutory maximum imposed on this count. As the two "critical elements" exist, applying Section 9718.5 to Kinley constitutes an *ex post facto* violation. The trial court's sentence on this count was illegal.[8]

In his next sentencing issue, Kinley challenges the legality of his 20 to 40 year sentence at Count 2, rape of a child, as the "obvious product" of the unconstitutional mandatory minimum set forth in the prior version of 42 Pa.C.S. § 9718(a)(3). Kinley's Brief at 81. In making this assertion, Kinley concedes that our Supreme Court's decision in **Commonwealth v. Resto**, 179 A.3d 18 (Pa. 2018) requires this Court to find that the mandatory minimum was lawful. Thus, we need not address this issue further.[9]

_____

[8] Given our decision, we need not consider whether the statute's mandate that a trial court impose a consecutive term of probation beyond the statutory maximum is constitutional. **See Commonwealth v. Crump**, 995 A.2d 1280, 1284 (Pa. Super. 2010) (explaining a defendant cannot be given a term or probation which exceeds the statutory maximum).

[9] Kinley argues that the trial court's sentence on this count "was evidently informed by an unconstitutional mandatory minimum." Kinley's Brief at 6. Our review of the sentencing transcript supports the trial court's statement in its opinion that it did not refer to the mandatory minimum section when imposing its sentence for this count. **See** Trial Court Opinion, at 5 (unnumbered). Kinley disputes this statement because "the 20 to 40 years imposed for this count was informed by the [10-year] mandatory minimum since the minimum of 20 years far exceeds" the applicable sentencing guideline ranges. Kinley's Brief at 81 n.243. However, our precedent allows the trial court to impose a minimum sentence higher than any applicable mandatory minimum. **See**, **e.g.**, **Commonwealth v. Ziegler**, 112 A.3d 656 (Pa. Super. 2015). Kinley acknowledges that he raised this issue to preserve it for any future appeal.

- 15 -

Kinley's final two sentencing issues involve the reasonableness of his sentence. Because they both challenge the discretionary aspects of his sentencing, we address them together. This Court has explained that, to reach the merits of a discretionary sentencing issue, we must conduct a four-part analysis to determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence [in accordance with 2119(f)]; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code. . . . [I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

*Commonwealth v. Colon*, 102 A.3d 1033, 1042–43 (Pa. Super. 2014) (quoting *Commonwealth v. Austin*, 66 A.3d 798, 808 (Pa. Super. 2013)).

Here, Kinley satisfied the first three requirements under *Colon*. Accordingly, we must determine whether he has raised a substantial question for our review. An appellant raises a "substantial question" when he "sets forth a plausible argument that the sentence violates a provision of the [S]entencing [C]ode or is contrary to the fundamental norms of the sentencing process." *Crump*, 995 A.2d at 1282 (citation omitted).

In his Rule 2119(f) statement, Kinley asserts that "his sentence wasn't individualized and it unreasonably exceeded the aggravated ranges of the sentencing guidelines without an adequate explanation from the trial court as to why." Kinley's Brief at 31. These claims raise a substantial question.

- 16 -

*Commonwealth v. Luketic*, 162 A.3d 1149, 1160 (Pa. Super. 2017) (finding claim that sentence was not individualized raises a substantial question); *Commonwealth v. Griffin*, 741 A.2d 726, 735 (Pa. Super. 1999) (*en banc*) (concluding an allegation that the sentencing court did not adequately set forth its reasons on the record presents a substantial question). Thus, we will review the merits of Kinley's claims.

Our standard of review when deciding sentencing claims is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, is not shown merely to be an error in judgment. Rather the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Shull*, 148 A.3d 820, 831 (Pa. Super. 2016) (citation omitted).

Prior to imposing sentence, the only comments made by the trial court were as follows:

> THE COURT: We're here, as we said, in the matter of Commonwealth versus Kinley. [Kinley], what I am going to say to you is that what you did to [the complainant], that the jury found what you did to [her], is unspeakable. Children look to a parent for guidance and support and what you gave [the complainant] was something that I hope that she can live with and move on from for the rest of her life. I hope that it's something that doesn't cloud the rest of her normal life.

N.T., 9/18/19, at 5-6.

- 17 -

Although the trial court made these brief statements, it did not acknowledge why it chose to deviate from the applicable guidelines with respect to any specific count. Moreover, while a pre-sentence investigation was prepared, the trial court made no reference to it. ***See id.*** at 3 (current counsel acknowledges receiving a copy of the pre-sentence investigation).[10] Indeed, when imposing sentence the trial court made no mention of Kinley's personal circumstances, but instead focused solely on the nature of the crimes and their effect on the complainant. Given these circumstances, we agree with Kinley that the trial court's sentence is contrary to the fundamental norms of the sentencing process. ***See Luketic***, 162 A.3d at 1160-61 (citation omitted) (concluding that "a sentencing court abuses its discretion when it considers the criminal act, but not the criminal himself").

In sum, we affirm Kinley's convictions, but because the sentences imposed by the trial court were not individualized, we are constrained to vacate his judgment of sentence and remand for resentencing on all counts.

Convictions affirmed. Case remanded for resentencing consistent with this memorandum. Jurisdiction relinquished.

---

[10] The pre-sentence investigation does not appear in the certified record.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/16/2021